STATE, Respondent, v. BALFANY, Appellant.

(210 N. W. 722.)

(File No. 6184. Opinion filed November 20, 1926.)

**1. Larceny.**

Evidence held to sustain conviction for larceny of chickens.

**2. Criminal Law—Jury.**

That jury, in chicken stealing case, was out only ten minutes and took only two ballots held not to show misconduct.

**3. Criminal Law—New Trial.**

Alleged misconduct of juror, in considering information received during noon recess, held insufficiently established to show abuse of discretion in denying new trial.

**4. Criminal Law.**

Juror's guilt of misconduct is question for court on motion for new trial, and court's action will not be disturbed except for abuse of discretion.

Note.—See Headnote (1), American Key-Numbered Digest, Larceny, Key-No. 55, 36 C. J. Sec. 483; (2) Criminal law, Key-No. 925(1), 16 C. J. Sec. 2669; (3) Criminal law Key-No. 925½ (1), 16 C. J. Sec. 2755; (4) Criminal law, Key-No. 925(1), 1156(5), 16 C. J. Sec. 2669, 17 C. J. Sec. 3589.

Appeal from Circuit Court, Tripp County; HON. JOHN G. BARTINE, Judge.

William Balfany was convicted of larceny, and he appeals. Affirmed.

*P. A. Hosford,* of Winner, for Appellant.

*Buell F. Jones,* Attorney General, and *Bernard A. Brown,* Assistant Attorney General, for the State.

POLLEY, J. The defendant was convicted of the larceny of 57 chickens and, from the judgment and an order denying his motion for a new trial, he appeals to this court.

Two grounds, insufficiency of the evidence to support the verdict and misconduct of the jury, are urged for a reversal.

[1] Upon the first ground, the evidence on behalf of the state tended to prove that the complaining witness, Mrs. Fisher, lived some ten miles south of Winner; that, on the morning of April 17, 1925, she missed the chickens, and immediately commenced to make inquiries and otherwise to endeavor to ascertain who had taken them. She went to the poultry dealers in Winner and Colome, examined the poultry on hand in those places, and, on April 22d, claimed to have found her chickens in the possession of a poultry dealer in Winner. She positively identified three of them by particular marks, and the remaining 54 as of the same general character, breed, color, and size as the chickens she had lost.

The chickens so claimed by the complaining witness were sold to said dealer by the defendant at about 9 o'clock on the evening of April 18th. Defendant admitted selling the chickens so claimed by Mrs. Fisher, but denied that they were her chickens or that they came from her place; and he claimed that the said chickens belonged to one Mrs. Yanak, who lived on a farm some four miles northwest of Winner, that he was merely hauling them to town at the request of Mrs. Yanak, and that he sold them, taking a check payable to himself, but which he turned over to Mrs. Yanak. This check, however, was not produced at the trial. Mrs. Yanak claimed that she was the owner of and that she had raised all of the chickens sold by defendant. There were a few more than 57 chickens in the lot hauled in by defendant, but 57 of them answered to the description given by Mrs. Fisher. A son of Mrs. Yanak and a son of defendant both testified that they helped to catch and crate the chickens for Mrs. Yanak, on the

evening of April 18th.  Mrs. Yanak testified that she had right around 100 chickens of her own, on the 18th of April, and that she had about that number all winter, and that they were all Buff Orpingtons.  One Pete Peterson testified that he stayed at the Yanak place about a week in February of that year, that he saw chickens on the Yanak place, and that there were not as many as 50 Buff Orpington chickens on the place at any time while he was there.

Had this explanation of defendant's been true, it sufficiently accounted for his possession of the chickens, but, whether true or not, was a question solely for the jury; and, the jury having found against him, such finding is final.

[2]  Upon the other branch of the case, it is made to appear that the jury was out only ten minutes, after the case was submitted to them, until they returned with a verdict; that no discussion, whatever, of the evidence took place among the jurors; that but two ballots were taken; that the first was 11 to 1 for conviction, and on the second ballot the vote was unanimous for conviction.  These facts, of themselves, do not show misconduct. They merely show that the jurors were convinced of defendant's guilt when they retired from the court room.

[3]  It was shown by affidavits that after the trial, one of the jurors, Nelson by name, said:

"At noon [after the evidence was all in], I did not know whether defendant was guilty or not, but that I [Nelson] heard and received some information at the noon hour which convinced me that there was no question of Balfany's guilt."

The juror denied having made such a statement and, in an affidavit, stated that he did not hear anything during the noon hour, or any other time, concerning this case, except what he heard from the witness stand during the trial.  And it was further shown by affidavit that this juror did not impart any information to the other members of the jury after the noon hour.

[4]  Whether the juror was guilty of misconduct was a question to be determined by the trial court, at the hearing of the motion for a new trial, and unless it is apparent that the trial court has abused its discretion, this court will not disturb that court's ruling.  This is the long-settled rule in this court.  State v.

McDonald, 16 S. D. 85, 91 N. W. 447; State v. McGrath, 46 S. D. 465, 193 N. W. 601; State v. Hayes, 40 S. D. 104, 166 N. W. 425; State v. Kennedy, 195 Iowa, 1059, 191 N. W. 877. Nothing is shown that constitutes misconduct on the part of the jury and there was no error in denying the new trial.

The judgment and order appealed from are affirmed.