## BOLDEN v. UNITED STATES.

### No. 6014.

Court of Appeals of the District of Columbia.

Submitted Dec. 4, 1933.

Decided Jan. 15, 1934.

Cedric F. Johnson and William J. Crane, both of Washington, D. C., for appellant.

Leo A. Rover, U. S. Atty., and Irvin Goldstein, Asst. U. S. Atty., both of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a conviction of murder in the first degree under an indictment charging defendant (appellant) with the murder of his wife, Elsie.

For some time prior to July 16, 1932, the evidence discloses that defendant had been estranged from his wife, who was then living at the home of her mother, Janie Plummer, her father, and several brothers, at 1218 Thirty-Seventh Street N. W., in this city. At about 12:30 on the morning of the 16th, defendant went to his sister's home on K street and procured a revolver. He then proceeded to the house on Thirty-Seventh street where his wife was living. She and her two young children were sleeping in a room on the second floor. Her mother occupied another room on the same floor, as did Edward Riley, Elsie's brother. Defendant went upstairs into his wife's room. He spoke to her and she got out of bed and asked what he wanted. Whereupon he took the revolver from his pocket and shot her. She died within a few minutes. Aroused by the noise, the mother ran from her bedroom to that of her daughter. As she came into the room defendant turned and shot her, and she fell in the doorway and died a few hours later. Defendant stepped over the body of his mother-in-law and went into the hall, and, as he did this, Edward Riley came from his bedroom; whereupon defendant fired at him, but the shot went wild. Defendant left the house immediately and went to his sister's house and to bed, where he was arrested a few hours later.

On the same day he wrote and signed a short statement in which he admitted the killing.

Later in the day he made a further statement to police officers. This statement was reduced to writing and signed by defendant. The first confession was introduced in evidence without objection.

■ The first paragraph of the second statement reads as follows: "Bolden, you have made a verbal statement in which you stated you are the guilty party who on the morning of July 16, 1932, about 12:30 a. m., shot Elsie Bolden, your wife, with a .32-cal. pistol, resulting in her instant death, and shooting Jannie, your mother-in-law, with the same revolver, who about 3:45 a. m., same date, died from wound inflicted by you. Now, before asking you to make the same statement, so that we can take same down on the typewriter, I wish to warn you of your rights, that you do not have to make a statement, and that any statement that you do make will be used at your trial in court. Now, after receiving this warning, do you still care to make a statement?" The answer was, "Yes."

It is objected that the first sentence of this statement was "not properly a part of the confession," but "a conclusion on the part of the police officer." There is no merit in this contention. The officer was simply stating the substance of what the defendant had said. It was incorporated in and made a part of the signed confession, in which the details of the killing were stated.

■ It is next contended that the court erred in excluding the testimony of defendant's witness Carroll to the effect that on Christmas Day, 1931, approximately seven months prior to the shooting, an altercation had taken place between the wife and defendant, as a result of which "the defendant was ordered out of the house, his clothes were thrown out after him, and the mother-in-law threw a lamp at him as he was going down the stairs." Counsel stated that they expected "to connect that up with evidence by the defendant to show the course of continuous cruel treatment on the part of the relatives of the deceased wife * * *. The purpose is to show that this defendant was put in fear by these people." We agree with the learned trial justice that the proposed testimony was irrelevant. Moreover, it would have been prejudicial to the defendant as tending to establish premeditation and deliberation.

■ It is further contended that the court erred in refusing the defendant's instructions No. 6 and No. 9, reading as follows:

(6) "The jury are instructed that if you believe from all the evidence, that at the time of the shooting, the mind of the defendant was agitated by either of the emotions of the mind known as anger, resentment, or terror, rendering it incapable of cool reflection, then you would not be justified in finding the defendant guilty of an offense greater than that of manslaughter."

(9) "The jury are instructed that mere words, in and of themselves, however provocative, are never sufficient provocation to reduce the degree of a homicide from murder to manslaughter, yet a sudden confession by a wife to her husband of past adultery does constitute sufficient provocation to reduce the degree of homicide from murder to manslaughter; and, therefore, if the jury find from the evidence that the deceased, Elsie Bolden, then the wife of the defendant, did make such a confession, and that the defendant as a result thereof became so enraged or angered that he then and there shot and killed her, then your verdict must be manslaughter."

Defendant had testified that when he reached 1218 Thirty-Seventh street on the night of the killing, "he saw his wife in her room upstairs; that he said good evening to his wife, and told her that he had been looking for work; that his wife told him that she did not believe him; that an argument started, and his wife told him that she had been out with another man; that his wife told him that she had committed adultery with this other man right to his face, and that she said to him that she did not give a damn about him any more; that his wife said she did not care what became of him and the two children; that he could take the two children and get out; that he then lost his head, and all he remembered was getting into a scuffle, and that he does not remember what happened after that; that that was the first and only time his wife ever told him she had committed adultery with other men; that that was the first time he knew it; that his mind became a blank after that." On cross-examination the defendant stated "that he does remember his wife striking him once with a window stick."

On this phase of the case the court instructed the jury as follows: "The only way I can see in this case that there could be manslaughter would be that if you should find a state of facts something like this, that if this man, as a result of the blow on the head and the confession of adultery, if you find those things took place—if, as a result of those, he was aroused into such a state of frenzy that he shot this woman and without intent to shoot her, it might be manslaughter. To go a step further, if that caused such a complete lapse of his mind that he was unconscious of what he was doing, that he lost capacity to judge between right and wrong and did not know the nature and quality of his act, and that it was wrong, then he would not be guilty

of anything. That would be equivalent to the act of an insane person, an irresponsible person."

The instruction as given, in our view, is more favorable to the defendant than the refused instructions. In the second confession the defendant was asked whether when he procured the revolver he had made up his mind to use it on his wife. His answer was: "I guess you can put yes." The evidence as a whole overwhelmingly demonstrated that the killing was deliberate and premeditated.

The last assignment of error is based upon the refusal of the court to grant a new trial. It is contended that the jury reached a verdict too quickly. The evidence was of such a conclusive character that there was little occasion for deliberation on the part of the jury. Certainly it may not be said that there was an abuse of discretion by the trial judge in denying the motion for a new trial.

The judgment must be affirmed.

Affirmed.