UNITED STATES of America
v.
Paul J. RICHARD alias John Doe.
Cr. No. 6745.

United States District Court
D. Rhode Island.
Sept. 20, 1962.

Raymond J. Pettine, U. S. Atty., William A. Gearon, Asst. U. S. Atty., Providence, R. I., for plaintiff.

Archie Smith, Providence, R. I., Edward M. Botelle, Westerly, R. I., for defendant.

DAY, District Judge.

In this case the defendant is charged in an indictment containing three counts with violations of Sec. 7201 of the In-

ternal Revenue Code of 1954, 26 U.S.C.A. § 7201. Counts I and II charge him with willfully and knowingly attempting to evade and defeat a large part of the income taxes due and owing by him and his wife to the United States for the calendar years 1955 and 1956 by filing and causing to be filed false and fraudulent income tax returns for each of said years. Count III charges him with willfully and knowingly attempting to evade and defeat a large part of the income tax due and owing by him for the calendar year 1957 by filing and causing to be filed a false and fraudulent income tax return for said year.

After a trial lasting slightly more than five full trial days, the jury returned verdicts finding the defendant guilty on each of said counts. Subsequently and within the time prescribed by the Federal Rules of Criminal Procedure, rule 33, 18 U.S.C., the defendant filed a motion for a new trial and thereafter a motion for a new trial based on newly discovered evidence. Both of these motions were heard by me on the same date and at the conclusion of oral arguments thereon I reserved decision.

The Government's case was based on the net worth and expenditures method of proof, it contending that the net worth of the defendant was greater at the end than at the beginning of each of said years in issue, and that the source of said increased net worth was taxable income which exceeded that reported in said income tax returns.

During the trial the Government produced uncontradicted evidence of substantial increases in the net worth of the defendant during each of said years and evidence of the sources of taxable income by the defendant during said years. It also showed that it had investigated the claim by the defendant that he had been the recipient of substantial gifts from his father prior to 1944. No other leads, so-called, had been furnished to it by the defendant to indicate that increases in his net worth were the results of the receipt by him of non-taxable income. Said increases of net worth during the

years 1955 and 1956 greatly exceeded the net income reported by the defendant for those years; and for the year 1957 the defendant reported a loss in his tax return. The defendant did not testify in his own behalf and offered no explanation of said increases in net worth by testimony of any other persons. In the presentation of his defense he called as witnesses several individuals who testified as to his previous good reputation for honesty and integrity. In addition, he produced one witness who gave testimony as to business dealings between the bank, of which he was an officer, and the defendant. The only other witness appearing in his behalf gave testimony as to the ownership of a school bus valued at $1,100 which a Government witness had claimed was the property of the defendant, and which the Government had included in its computation of his net worth for the years 1956 and 1957. In rebuttal this same witness for the Government testified as to the effect in dollars and cents which non-ownership of said school bus would make in the net worth of the defendant at the end of 1956 and at the beginning and end of 1957.

The motion for a new trial asserts that it should be granted for twenty-two alleged grounds or reasons. Grounds one to five, inclusive, are as follows: "(1) The court erred in denying defendant's motion for acquittal at the conclusion of the evidence, (2) The verdict is contrary to the weight of the evidence, (3) The verdict is not supported by substantial evidence, (4) The verdict is contrary to the law, and (5) the verdict is against the law and the evidence."

■ In my opinion there was overwhelming evidence to support the verdicts of the jury. The verdicts were clearly in accordance with the law. To review the evidence in detail and the reasonable inference which a jury could properly draw from it would serve no useful purpose. A conscientious and intelligent jury such as that which heard this case could not honestly reach any other verdict as to each of the counts of said indictment.

■ Defendant contends in grounds 7 to 18, inclusive, of said motion that he should be granted a new trial because I erred in certain rulings admitting or excluding evidence and in certain comments which I made during the trial. In my opinion, all of these grounds are without merit, do not justify the granting of a new trial, and require no discussion.

As ground 19 of his motion the defendant contends that I erred in refusing to charge the jury in accordance with certain requests submitted by him. I believe that the charge as given was an ample, fair and correct statement of the pertinent law. There is no legal requirement that a trial court instruct a jury in the precise language requested by a defendant.

■ Grounds 20, 21 and 22 of said motion may be properly considered together. In each of them the defendant contends that he was deprived of a fair trial by the publication on May 8, 1962 of a certain news article in "The Evening Bulletin", a newspaper of general circulation in this District. This article bore the headline "At $24.27 Per Word". The article then related that on that date the Government had called one George Wynhoff of Miami, Florida, as a witness to testify that he had sold a race horse named Catalpa to the defendant in September, 1953, for $3,000, and that his answers to questions propounded to him required only 13 words. Said article further stated that it cost the Government $315.52 to bring the witness to court, or at the rate of $24.27 per word, there having been no cross-examination of him by defendant's counsel. The article also stated that the United States attorney had said that he had been compelled to summon Mr. Wynhoff when counsel for the defense refused to stipulate that $3,000 was the amount paid by the defendant for said horse.

On the following morning, counsel for the defendant, in the absence of the jury, moved for a mistrial on the ground that the implication from said news story was that the defendant is "throwing obstruc-

tionist tactics into this case—is trying to suppress something" and that said article was highly prejudicial to the defendant and would make it impossible for him to obtain a fair trial. Earlier, during the trial, as appears in the record, a Government witness had been permitted to use the sum of $3,000 as the cost price of said horse to the defendant in computing the net worth of the defendant as of December 31, 1954, upon the assurance of the United States attorney, made in the presence of the jury, that evidence to that effect would be presented later, and counsel for the defendant had made known his objection to its use unless such evidence were presented later.

After somewhat lengthy arguments, I denied said motion, being of the opinion that the defendant had failed to show that there was any reasonable likelihood that prejudice to the defendant would necessarily follow from the contents of said article if it was read by the jury. Later, at the conclusion of the Government's case, defendant renewed said motion and also moved that said case be taken from the jury and passed upon the same grounds. These motions were likewise denied by me for the same reason. At no time did defendant request that the jurors be examined as to whether they had read the article, and, if so, whether it would affect their individual judgments.

In support of these grounds of his motion defendant relies upon the cases of Marshall v. United States, 1959, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250, and United States v. Kum Seng Seo, 3 Cir., 1962, 300 F.2d 623. In my opinion the situation presented here is vastly different from the situations presented in those cases. They are clearly distinguishable on their facts.

Here, I do not believe that the article of which defendant complains necessarily implied that the defendant was resorting to obstructionist tactics or endeavoring to suppress evidence as counsel for the defendant contend. In any event, I am not persuaded that any harm therefrom resulted to the defendant. On the opening day of the trial I cautioned the members of the jury not to discuss the case among themselves until it was finally submitted to them for decision. I further instructed them not to permit anyone to discuss it with them and to report any attempt to do so to me immediately, and that appropriate action would be taken by me. In my charge I instructed the jury that the burden rested upon the Government to establish the guilt of the defendant by proof beyond a reasonable doubt, and that there was no burden upon the defendant to prove his innocence. I further instructed the jury that the defendant was not to be found guilty on mere suspicion, conjecture or speculation. I also instructed the jury that it was both the right and duty of counsel for the parties to make objections to the introduction of any evidence which he believed to be inadmissible. I further instructed the jury that it was their duty to decide the case solely on the evidence presented in the courtroom and in accordance with the law as stated in my instructions to them. In addition, I specifically instructed them that if they had read any newspaper accounts of events which had transpired during the trial they should disregard them completely, and I again instructed them that they should decide the case solely on the evidence that had been presented from the witness stand, and on that evidence only.

The record will show that no objection was taken to my charge as given, although formal objection was made to my failure to give certain specific requests in the language proposed by counsel for the defendant. In my opinion, I am justified in believing that I was dealing with an "intelligent American jury of honesty and integrity" which understood what I meant in my instructions to them and comprehended what was their duty. I have no reason to believe that they were false to their oaths as jurors. Ferrari v. United States, 1957, 9 Cir., 244 F.2d 132; United States v. Griffin, 1949, 3 Cir., 176 F.2d 727, cert. den'd 1950, 338 U.S. 952, 70 S.Ct. 478, 94 L.Ed. 588. I am satisfied that the defendant was not prejudiced by said article and that he had

a fair trial. The evidence of his guilt as to each count of the indictment was overwhelming. In my opinion no honest, intelligent jury could have arrived at any different verdict as to any of said counts. To have done so would have been a mockery of justice. The verdicts have my unqualified approval.

Finally, in his motion for a new trial, defendant complains that the jury reached its verdict too quickly. He contends that the shortness of time taken by the jury in reaching its verdicts evidences prejudice against the defendant and/or a misunderstanding by the jury of the merits of the case against the defendant. The record shows that the selection of the jury, presentation of the evidence, somewhat lengthy oral arguments in the absence of the jury upon several motions made by the defendant, closing arguments of counsel and charge to the jury consumed slightly more than five full trial days. The jury retired to deliberate at 4:10 p. m., returned to the courtroom at 4:25 p. m. to receive the answer to a question submitted by its foreman, retired again at 4:27 p. m. for further deliberations, and returned its verdicts at 5:10 p. m.

■■ It is well settled that shortness of time taken by a jury in reaching its verdict in the absence of circumstances evidencing passion or prejudice is not ground for a new trial. United States v. Young, 1962, 6 Cir., 301 F.2d 298; Bolden v. United States, 1934, 63 D.C.App. 45, 69 F.2d 121; State v. Brown, 1960, 122 Vt. 59, 163 A.2d 845; Mahoney v. Smith, 1961, 78 R.I. 56, 78 A.2d 798; Commonwealth v. Noxon, 1946, 319 Mass. 495, 66 N.E.2d 814. It is the evidence and not the time required by a jury to reach a verdict that is controlling in the

consideration of a motion for a new trial. Here, there is no showing of the existence of any passion or prejudice against the defendant. The evidence of the defendant's guilt was clear, concise and overwhelming. The jury was not called upon to spend time discussing matters upon which they were in agreement. In my opinion it is not surprising that its members could arrive at their verdicts as quickly as they did. This ground of said motion is likewise without merit.

As hereinbefore recited, the defendant has also moved for a new trial upon the ground of newly discovered evidence. The so-called newly discovered evidence consists of an affidavit by an investigator that one of the jurors, after trial, told him that a copy of The Providence Journal, a morning newspaper of general circulation in this State, was in the jury room on the morning of the final day of the trial of this case, that said newspaper contained a news article about the trial, a part of which was similar to that appearing in The Evening Bulletin on May 8, 1962, and that at the suggestion of a fellow juror he had read it. In my opinion this motion presents the same question as that presented in defendant's motion for a new trial which I have hereinbefore discussed at considerable length. I see no reason for any extended discussion of this motion. I am satisfied that the jury followed my instructions and I am convinced that the defendant had a fair trial which resulted in the only verdicts that a conscientious and intelligent jury could return.

Accordingly, the defendant's motion for a new trial and motion for a new trial based upon newly discovered evidence must be and they hereby are denied.