Edward Albert SEIBOLD, Petitioner,

v.

Murray DANIELS, Warden of Holman
Prison, et al., Respondents.

Civ. A. No. 930–E.

United States District Court,
M. D. Alabama, E. D.

Feb. 8, 1972.

Charles Ingrum and Jacob Walker, Jr., Opelika, Ala., for petitioner.

William J. Baxley, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., Montgomery, Ala., for respondents.

## ORDER

VARNER, District Judge.

Petitioner was convicted of murder and sentenced to death in the Circuit Court of Lee County, Alabama, on January 20, 1968, and the Supreme Court of Alabama affirmed on October 7, 1971. On December 3, 1971, this Court, by formal order, granted the motion of the Petitioner for leave to file and prosecute his petition for habeas corpus in forma pauperis. At the same time, the Warden of Holman Prison, and/or any other appropriate official acting for or in behalf of the State of Alabama, was ordered to show cause, if any there be, why the writ should not be issued, and was enjoined, pending further order of this Court, from executing the sentence of death against the Petitioner, then scheduled for December 10, 1971. To the show cause order the State of Alabama, by and through the Attorney General of Alabama, the Honorable William J. Baxley, filed as of December 30, 1971, its return and answer.

It has not been suggested that Petitioner has not exhausted his state remedies as required by Title 28, Section 2254, United States Code, and such an assertion would be in vain. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837; Whippler v. Balkcom, 342 F.2d 388 (C.A. 5th Cir.1965).

The primary thrust of Petitioner's application for a writ of habeas corpus is that his constitutional right guaranteed under the Fourteenth Amendment to the Constitution of the United States was denied to him in that he was not afforded a proper hearing to determine his sanity at the time of his trial. No question is here made that he did not receive a constitutionally proper hearing on the question of his sanity at the time of the offense.

Petitioner herein was scheduled for arraignment on December 22, 1967, but on his own motion arraignment was continued until December 27, 1967. On that date, with his attorneys present, before entering pleas to the merits, Petitioner filed a "Motion for Investigation of Sanity of Defendant", pursuant to the provisions of Section 425, Title 15, Code of Alabama (1958). This motion was accompanied by the affidavit and letters, respectively, of Dr. Charles E. Herlihy and Dr. Hugo Waldheim, Jr., both reputable specialists in mental diseases. Dr. Herlihy's affidavit concluded that the Petitioner was then psychotic and not then capable of competently assisting in the defense of the cases pending against him and suggested that Petitioner be committed to an appropriate mental hospital for further diagnostic procedures. Dr. Waldheim's letter concluded that Petitioner demonstrated evidence of mental illness and was then in need of more extensive evaluation before a definitive diagnosis could be established. Petitioner's motion prayed that a hearing on said motion be continued until a written report could be obtained from another psychiatrist, Dr. Charles H. Smith, and upon the hearing of the motion the Court consider the three reports and deliver Petitioner to the Superintendent of the Alabama State Hospitals for a determination of his mental condition as it would affect his criminal responsibility. Petitioner's motion was overruled by the trial court on December 27, 1967, without hearing any additional testimony, but with leave granted to refile the motion after the

Petitioner had been examined by Dr. Smith. At the same time the Court granted Petitioner leave to file a motion for investigation of the Petitioner's sanity pursuant to Section 426, Title 15, Code of Alabama (1958).

Also on December 27, 1971, the Petitioner filed a plea in abatement setting forth that he was presently incapable of competently assisting in his defense at the present time, and that prosecution should be abated until such time as the Petitioner's sanity had been restored. Petitioner further prayed that said plea be set down for determination by a jury pursuant to Section 426, Title 15, Code of Alabama (1958). On motion of the State said plea was stricken without testimony.

Petitioner thereupon entered pleas of not guilty and not guilty by reason of insanity. At the time of entering said pleas, Petitioner's counsel stated that such was done without waiving the points raised by the plea in abatement.

On January 8, 1968, Petitioner filed a "Second Motion for Investigation of Sanity of Defendant", attaching the affidavits of three reputable specialists in mental diseases. Dr. Herlihy's and Dr. Waldheim's opinions, as previously stated, were joined by Dr. Smith's affidavit that in his opinion Petitioner was now of unsound mind and not able to adequately assist in his own defense. This "Second Motion" prayed that, pursuant to Section 425, Title 15, Code of Alabama (1958), the court appoint three reputable specialists to examine the Petitioner and report to the court, or in the alternative that the court accept the three affidavits attached to the motion, and that upon consideration of said reports deliver the Petitioner to the Superintendent of the Alabama State Hospitals for determination of his present mental condition.

The "Second Motion" was presented to the court on January 12, 1968, and the court heard ore tenus the testimony of Dr. Howard S. Weldon, a general practitioner who treated patients in the Lee County Jail. Dr. Weldon testified that the Petitioner's behavior while in jail had "jumped the bounds of conventional and normal behavior". When asked whether in his opinion the Petitioner was suffering from insanity, Dr. Weldon stated: "I had mixed feelings about it and I have to admit that. I couldn't tell the truth and say otherwise * * *." He further recommended that the Petitioner be institutionalized to determine his sanity. The court overruled Petitioner's "Second Motion".

On January 12, 1968, Petitioner filed a "Motion for Inquiry into Mental Condition of Defendant Before Trial" pursuant to Section 426, Title 15, Code of Alabama (1958), attaching the same three affidavits of Drs. Herlihy, Waldheim and Smith, and in addition referring to a report of Dr. Ronald Hamby, a clinical psychologist, who had examined Petitioner and was likewise of the opinion that Petitioner was presently of unsound mind, psychotic and paranoid. This motion prayed that a jury be empanelled to inquire into the mental condition of the Petitioner prior to being put to trial. On the same day the court "refused and denied the motion".

Trial was commenced on January 15, 1968, and on January 20 the jury returned a verdict of murder in the first degree and imposed the death penalty. Judgment and sentence in accordance with the verdict were entered by the court on the same day.

Petitioner's case was appealed to the Supreme Court of Alabama under the automatic appeal statute applicable where a death penalty is imposed. Title 15, Section 382(1) et seq., Code of Alabama (1958). The Supreme Court of Alabama affirmed Petitioner's conviction and on October 7, 1971, denied rehearing, Chief Justice Heflin and Justice Lawson, dissenting.

Petitioner avers in this petition that, in denying his motion for a determination of his sanity, the Circuit Court of Lee County thereby denied him the guarantee of the Fourteenth Amendment which prohibits the trial of a person while insane, as stated by the Supreme

Court of the United States in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, by the Court of Appeals for the Fifth Circuit in Lee v. State of Alabama, 386 F.2d 97, and by this Court in Zackery v. Hale, 286 F.Supp. 237

> "* * * the conviction of an accused person while he is legally incompetent violates due process, Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956), and that state procedures must be adequate to protect this right." Pate v. Robinson, supra, 383 U.S. at page 378, 86 S.Ct. at page 838, at page 818.

It is clear under the law as presently interpreted that a defendant in a criminal proceeding is entitled, upon a sufficient showing, to a determination of his competence to stand trial and absent such determination he cannot be constitutionally tried and convicted. Pate v. Robinson, supra; Lee v. State of Alabama, 386 F.2d 97 (5th Cir.1967); Zackery v. Hale, 286 F.Supp. 237, 241. When sufficient evidence is shown to support a motion for a determination of mental competency to stand trial, refusal of the trial judge to conduct a hearing on such motion violates the defendant's constitutional rights of due process of law. *See e.g.,* Zackery v. Hale, supra.

In the instant case Petitioner made four motions regarding his sanity, two made pursuant to Title 15, Section 425, Code of Alabama (Recomp.1958) and two made pursuant to Title 15, Section 426, Code of Alabama (Recomp.1958).

Upon Petitioner's "Second Motion for Investigation of Sanity of Defendant", filed pursuant to Section 425, the trial court granted a hearing at which the testimony of Dr. Howard S. Weldon was heard. The Defendant, defense counsel, and the district attorney were present, and arguments by counsel were heard by the court before it overruled the motion. No hearings were held as to any of the other three motions.

Statutes may be ambiguous and confusing because of a difference in the legal meaning of the word "insani-ty" or "mental condition" when referring to the time of the crime or when referring to the time of the trial. Ordinarily, one's criminal responsibility is determined by whether or not at the time of the crime (which would not be criminal if performed while insane) he was insane—that is—was he mentally able to distinguish right from wrong and to resist doing wrong at the time of the crime. Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am.Rep. 193 (1887); Grant v. State, 250 Ala. 164, 33 So.2d 466 (1948); Lakey v. State, 258 Ala. 116, 61 So.2d 117 (1952); Barbour v. State, 262 Ala. 297, 78 So.2d 328 (1955). His competence to stand trial is determined by whether at the time of the trial (and for a reasonable time theretofore) he was able to understand the charge against him and able to aid in his own defense. Dusky v. U. S., 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824; Feguer v. United States, 302 F.2d 214, cert. den. 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110; Smith v. United States, 174 F.Supp. 828, cert.den. 362 U.S. 954, 80 S.Ct. 868, 4 L.Ed.2d 871. Due process of law contemplates trial court procedures adequate to legal determinations both of whether at the time of the crime the defendant was able to distinguish right from wrong and resist doing wrong and of whether at the time of the trial the defendant is competent to understand the charge against him and to aid in his defense. Whenever the trial judge has cause to reasonably doubt defendant's sanity at either time, he must take steps to assure a reasonable legal determination of such questions.

Title 15, Section 425, supra, provides, in pertinent part, as follows:

> "§ 425. *Investigation of sanity of person charged with capital offense.*—Whenever it shall be made known to the presiding judge of a court by which an indictment has been returned against a defendant for a capital offense, by the written report of not less than three reputable specialist practitioners in mental and nervous diseases, appointed by the judge, or by

the written report of the superintendent of the Alabama state hospitals, that there is reasonable ground to believe that such defendant was insane either, at the time of the commission of such offense, or presently, it shall be the duty of the presiding judge to forthwith order that such defendant be delivered by the sheriff of the county to the superintendent of the Alabama state hospitals, who is charged with the duty of placing such defendant under the observation and examination of himself and two members of his medical staff to be named by him, constituting a commission on lunacy, with the view of determining the mental condition of such defendant and the existence of any mental disease or defect which would affect his present criminal responsibility, or his criminal responsibility at the time of the commission of the crime. * * * "

■ Under Alabama law compliance with this statute has been construed to be discretionary with the trial judge. On Seibold's appeal to the Alabama Supreme Court it is stated:

"* * * under Section 425, supra, the court is under no duty to appoint a lunacy commission or to procure the report of the Superintendent of the Alabama State Hospitals; the court, *in its discretion*, has simply the right to seek these aids when such reports may be deemed helpful. Howard v. State, 278 Ala. 361, 178 So.2d 520; Divine v. State, 279 Ala. 291, 184 So. 2d 628. The question of the appointment of medical specialists in mental disorders in response to a motion is solely within the discretion of the trial court. Coon v. State, 278 Ala. 581, 179 So.2d 710; Tiner v. State, 279 Ala. 126, 182 So.2d 859." Seibold v. State, 287 Ala. 549, 253 So.2d 302, at 308. (Emphasis ours)

While we respect this construction by a state court of a state statute, it cannot be construed to obviate a constitutional requirement.

The express purpose of Section 425, supra, is to allow the trial judge a determination of whether or not a defendant should be sent before a lunacy commission to determine 'his mental condition and the existence of mental diseases or defects "which would affect his criminal responsibility, or his criminal responsibility at the time of the commission of the crime." This section does not per se call upon the trial judge to make a determination of a defendant's mental competency to stand trial.

In Lee v. State of Alabama, 386 F.2d 97 (1967), the Fifth Circuit Court of Appeals commented on Section 425, supra, as follows:

"Although this section speaks of the 'mental condition' of the accused it seems clearly directed towards the specific inquiry whether an indicted person suffered from any mental disease or defect which would affect his *present criminal responsibility* or his *criminal responsibility at the time of the commission of the crime*. It is plain that this section does not expressly require any determination by the lunacy commission as to the mental capacity of the accused person, already under indictment in a capital case, *to stand trial*." 386 F.2d at 106.

This Circuit, therefore, seems to confine the deliberations under Section 425 to whether the defendant at the time of the crime was legally insane (unable to distinguish right from wrong or to resist wrong).

While a determination under Section 425, supra, of a defendant's present criminal responsibility may include a determination of his competency to stand trial, such cannot be necessarily concluded as a matter of law. The issue of the defendant's *criminal* responsibility (under the distinguish-and-resist-wrong test) either at the time of the trial or at the time of the commission of the crime appears to be separate and distinct from the issue of whether he is competent to stand trial (under the understand-and-defend test).

■ On Seibold's appeal to the Supreme Court of Alabama, that Court in the majority opinion cited the hearing

given the Petitioner on his "Second Motion" as being sufficient to provide due process under the Constitution. Seibold v. State, 287 Ala. 549, 253 So.2d 302, 309. This Court cannot agree with that determination. The hearing afforded Petitioner on his "Second Motion", filed pursuant to Section 425, supra, was directed solely to the issue of whether the defendant required an examination as to his sanity, applying the distinguish-and-resist-wrong test. It was at the utmost a proceeding to determine whether there was sufficient doubt as to the defendant's mental competency to warrant his examination by state psychiatrists, and no determination was made, or even attempted, as to the Petitioner's mental competence to stand trial under the understand-and-defend test.

Upon said hearing the trial court denied Petitioner's motions, in spite of the fact that all of the evidence then presented indicated doubt as to Seibold's present sanity. Upon the evidence reflected in the record of this case, no other conclusion is possible but that there was sufficient doubt as to Seibold's competence to stand trial. The hearing on his "Second Motion" only serves to emphasize the necessity of a hearing, as requested by the Petitioner's other motions, to determine his mental condition pursuant to Section 426, supra.

Title 15, Section 426, supra, provides in pertinent part as follows:

"§ 426. *Inquisition in certain cases of felony; proceedings.*—If any person charged with any felony be held in confinement under indictment, and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity, such jury to be impaneled from the regular jurors in attendance for the week or from a special venire, as the court may direct. If the jury shall find the accused sane at the time of their verdict, they shall make no other inquiry, and the trial in chief shall proceed. If they find that he is in-

sane at that time, the court shall make an order committing him to the Alabama state hospitals, where he must remain until he is restored to his right mind, * * *."

Section 426, supra, obviously contemplates what due process requires, a determination of the competence of the defendant at the time of his trial to stand trial. However, as with Section 425, supra, the Supreme Court of Alabama has declared that the granting of relief under Section 426, supra, is discretionary with the trial judge, Seibold v. State, 287 Ala. 549, 253 So.2d 302, 308, citing, Granbery v. State, 184 Ala. 5, 63 So. 975; Burns v. State, 246 Ala. 135, 19 So.2d 450, and further that the failure to grant such relief does not constitute reversible error. Seibold v. State, supra, citing, Rohn v. State, 186 Ala. 5, 65 So. 42; Whitfield v. State, 236 Ala. 312, 182 So. 42.

Therefore, while the trial judge has the statutory means to comply with due process and, upon sufficient cause being presented, to empanel a jury to determine the competency of the defendant to stand trial, he is also legally within his discretion and cannot be reversed in refusing to grant such relief. However, should the trial judge refuse to grant relief under Section 426, supra, where reasonable cause has been shown to doubt the defendant's competency, he cannot constitutionally try and convict the defendant without making some other determination of his competency to stand trial. Pate v. Robinson, supra; Lee v. Alabama, supra.

The effect of this seeming circle of legalities is that, where reasonable cause is shown to believe that defendant may be incompetent to stand trial, the trial judge, under Alabama law, has two alternatives: (1) He may empanel a jury as provided by Section 426, supra; or (2) he may, within his discretion, refuse to grant relief under Section 426, supra and establish some alternate method of determining the competence, of the defendant to stand trial, which complies

with due process as enumerated in Pate v. Robinson, supra. For example, the trial judge may decide to refuse relief under Section 426, supra, and proceed to a determination similar to that provided in federal courts. Under Title 18, Section 4244, United States Code, whenever there is reasonable cause to believe that a person charged with an offense may be presently incompetent to understand the proceeding against him or properly assist in his own defense, the court causes the accused to be examined by a psychiatrist or psychiatrists. When the psychiatric report is concluded, a hearing is then held, upon due notice, before the court as to the accused's competence to stand trial, at which hearing evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and a finding is made thereon.

Adopting this method to the state machinery, it is noted that a trial judge may seek a psychiatric examination of an accused under the provisions of Title 15, Section 425, supra. However, as has been previously stated, the inquiry established under Section 425, supra, (the distinguish-and-resist-wrong test) is different from that required to test mental competency to stand trial (the understand-and-defend test), and, therefore, the state judge would have to be careful in ordering such a report to specify the purposes of the examination.

 Returning our consideration to the instant case, it is apparent that, upon the denial of the Petitioner's motions made pursuant to Section 426, supra, the trial court did not further inquire into the Petitioner's mental competency to stand trial. In failing to so inquire the trial court denied the Petitioner due process of law, as required by the Fourteenth Amendment, and, therefore, his trial and conviction were unconstitutional and invalid. It is clear from the record in these proceedings that there was reasonable cause furnished by the affidavits of three qualified psychiatrists to doubt the Petitioner's mental competency to stand trial, and a determination either under Section 426, supra, or by other means cognizant with due process under Pate v. Robinson, supra, was necessary for a constitutionally sound conviction. His competency at that trial may not now be determined.

Accordingly, it is the order, judgment and decree of this Court that the judgment of guilty and the sentence pronounced thereon in the Circuit Court of Lee County, Alabama, in State Court Case No. 5126 on January 20, 1968, be, and the same is hereby, declared void and invalid. It is the further

Order, judgment and decree of this Court that Petitioner's, Seibold, present incarceration, based upon the judgment and sentence pronounced in State Court Case No. 5126 on January 20, 1968, is in violation of his constitutional rights. It is further

Ordered that Edward Albert Seibold be discharged from the custody of the State of Alabama and from the custody of any officers, employees or agents of the State of Alabama, which custody is pursuant to the conviction and judgment of the Circuit Court of Lee County, Alabama, which was pronounced in Case No. 5126 on January 20, 1968. Nothing herein shall be construed to bar a subsequent prosecution of Petitioner consistent herewith. It is further

Ordered that the costs incurred in this proceeding be, and they are hereby, taxed against the Respondent, for which let execution issue.