[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 32 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 33 
The appellant was convicted for the second degree murder of his mother and sentenced to life imprisonment. His defense was insanity.
 I
Initially it is alleged that error was committed by the trial judge when he failed to determine that the appellant was competent to stand trial. The appellant concedes that he was given a constitutionally proper hearing on the issue of his sanity at the time of the offense and that he was granted a properly conducted trial by jury to determine his "present sanity" on August 26, 1975. However the appellant contends that the competency trial on August 26th resolved the question of his competency to stand trial at that time only and not at the time of his trial on the merits conducted almost seven months later. A review of the procedural background culminating in the appellant's conviction is therefore necessary.
On October 6, 1974, the appellant was arrested for the murder of his mother. Counsel was retained and petition was made to the Inferior Court of Geneva County for an investigation into the sanity of the appellant. Pursuant to Title 15, § 428, Code of Alabama 1940, Recompiled 1958, the Inferior Court held such a hearing, determined that the appellant was insane and ordered him committed to the custody of Searcy Hospital, an Alabama state hospital for the mentally insane.
In November of 1974, the committing judge was advised by a staff psychiatrist at Searcy that the appellant
 "is sane, is mentally competent to stand trial, knows the difference between right and wrong, and is able to cooperate and communicate with counsel in his defense."
The appellant was then returned to the Geneva County jail to await further criminal proceedings.
In January of 1975, the appellant's retained attorneys were permitted to withdraw. One of the grounds cited by the attorneys requesting the withdrawal was that "there is a breakdown or lack of communication" between said attorneys and the appellant. New counsel was appointed by the circuit court to represent the appellant.
In February of 1975, the appellant was indicted and arraigned entering pleas of not guilty and not guilty by reason of insanity.
On June 9, 1975, the appellant was transferred to the Dale County jail because of "serious attempts at escape from the Geneva County jail" and because the jail was "unsafe insofar as the security of this defendant is concerned".
Upon motion by appellant's counsel, the Circuit Court of Geneva County held an *Page 34 
insanity inquisition to inquire into the present mental condition of the appellant. On August 26, 1975, testimony was presented and a jury found the appellant to be sane despite the adverse opinion of a psychologist. Defense counsel then moved that the trial in chief be continued because the jury venire was in the courtroom and heard the arguments of counsel on the trial of the competency of the appellant and thereby rendered defense counsel unable to select an unbiased jury. The court found that it would not be possible to get enough talesmen to try the case at that term of court due to the man power limitations of the sheriff's department to serve the necessary subpoenas for the additional jurors. Therefore the trial judge granted the request of the appellant and continued the trial until the next term of court.
On January 28, 1976, appellant's appointed counsel filed a motion to withdraw. One of the reasons cited in the motion was that:
 "4. This Attorney and the other Court-Appointed Counsel in this case have been unable to establish any relationship with this Defendant whereby a proper defense can be planned, because even though he has been adjudged sane by the Court, the Defendant continues to advance theories of defense which have been characterized by a Psychiatrist as delusional and symtomatic of paranoid schizophrenic."
Additional grounds cited in support of the motion to withdraw were that the appellant had filed a complaint with the Grievance Committee of the Alabama State Bar alleging the improper conduct of his attorneys, that the appellant was not indigent and that counsel's bill was already over $1,075.00. In a separate letter addressed to the circuit court, one of the appellant's attorneys noted that he was of "the firm opinion that he (the appellant) is not mentally capable of standing trial and due to his attitude we are having great difficulty in preparing any defense for him". The motion to withdraw was granted.
The appellant employed new counsel and on February 17, 1976, this counsel filed a motion for a change of venue. The motion was granted and the proceedings were transferred to Dale County.
On March 16, 1976, the trial of the appellant began. Two days later the jury found him guilty of murder in the first degree and fixed his punishment at life imprisonment.
The appellant contends that there was never a determination of his "present ability" to stand trial because of the seven month interval between his competency hearing and his trial on the merits. The appellant alleges that during that seven month period there occurred events which would generate reasonable doubt as to whether he was competent to stand trial and participate in the preparation of his defense. The events cited by the appellant which would generate such a reasonable doubt are: (1) Five months after the sanity trial appellant's court-appointed counsel submitted motions to withdraw from the case. Both motions were identical and among the grounds asserted were two which relate to this issue: (a) that the appellant had "deluged" his attorneys with requests to subpoena "extremely numerous witnesses in his behalf, ranging from Secretary of State, Henry Kissinger, and the Governors of several States to the entire police department of various cities and towns in the area of the trial"; and (b) that counsel was unable "to establish any relationship with the defendant whereby a proper defense can be planned because . . the defendant continues to advance theories of defense which have been characterized by a psychiatrist as delusional and symtomatic of paranoid schizophrenia". (2) One of the two attorneys permitted to withdraw, in a letter to the court in support of the motion, stated that he and another court-appointed counsel "are of the firm opinion that he (appellant) is not mentally capable of standing trial and due to his attitude we are having great difficulty in preparing any defense for him". (3) At the sanity hearing the only expert to testify was a psychiatrist who concluded that the appellant's "mental capacities are impaired to advise counsel and to stand trial at the present time because he is undergoing this illness at present". *Page 35 
The issue we must confront is whether a determination of competency to stand trial made approximately seven months prior to trial is an adequate and sufficient determination that the accused was competent to stand trial under the circumstances of this case. This will require a determination as to whether there were facts before the trial judge which would raise a reasonable and bona fide doubt of the mental competency of the appellant to stand trial.
The competence of an accused to stand trial is determined by whether at the time of the trial he has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and whether he has rational as well as factual understanding of the proceeding against him. Duskyv. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824
(1960); Seibold v. Daniels, 337 F. Supp. 210 (D.C. Ala. 1972).
When the issue of competency to stand trial is properly raised or when facts are present before the trial judge which create a reasonable and bona fide doubt as to the mental competency of the accused to stand trial, there is no question but that the trial judge must take steps to assure a reasonable legal determination of such questions. Where reasonable cause is shown to believe that the accused may be incompetent to stand trial, the judge, under Alabama law, has two alternatives: (1) He may empanel a jury as provided by Title 15, § 426, Code of Alabama 1940, Recompiled 1958, or (2) he may, within his discretion, refuse to grant relief under § 426 and establish some alternate method of determining the competence of the defendant to stand trial. Seibold, supra;Brinks v. Alabama, 465 F.2d 446 (5th Cir. 1972).
Where a Section 426 hearing has been held, the trial court should make a second determination of the defendant's competency to stand trial under the same circumstances as an original determination would be required, that is, where there exist facts which raise a reasonable and bona fide doubt of the defendant's competency. Whether a determination should be held does not turn on whether a timely request is made by the defendant. State v. Bradley, 102 Ariz. 482, 433 P.2d 273
(1967); Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836,15 L.Ed.2d 815 (1966); United States v. Cook, 418 F.2d 321 (9th Cir. 1969).
Since the appellant was determined to be competent on August 26, 1975, those facts must be found to exist between that date and March 18, 1976, the date on which the appellant was found guilty or there must be additional facts which were not presented at the competency trial.
Earlier in this opinion we have listed the events cited by the appellant which it is argued would raise a reasonable doubt of his competency. Several of these facts had been previously submitted to a jury, weighed by them, and when taken collectively adjudged not to raise a reasonable doubt of the appellant's competency to stand trial. Those were (1) the fact that the appellant had supplied his attorneys with requests to subpoena a large number of witnesses and (2) the testimony and opinions of the psychiatrist who concluded the appellant was incompetent. Other factors considered by the jury at the competency inquisition were his escape attempts from the county jail, the discharge of the appellant's first attorneys, ("Because they wanted me to plead crazy and I'm not crazy." "Well, I told them to get lost." "I don't know why they didn't investigate the case."), and his attitude toward his then present attorneys (". . . you're following the same thing they're following, you're following the same path they're following . . ."). Therefore, in order to determine the existence of circumstances raising a reasonable doubt of the competency of the appellant we must look to those facts existing after August 26th and to any new or additional fact which was not submitted to the scrutiny of a jury.
The only evidence of incompetency which had not already been reviewed by a jury and subjected to a legal determination was the fact that the appellant's court-appointed attorneys had withdrawn from the *Page 36 
case and expressed an opinion that the appellant was still
insane. Generally, defense counsel's remarks concerning his inability to communicate with his client are not entitled to any conclusive effect with respect to the issue of whether the defendant is competent to stand trial, although they should be considered by the court along with any other evidence of incompetency. Thibodeaux v. State, Tex.Cr.App., 505 S.W.2d 260
(1974); Drope v. Missouri, 420 U.S. 162, 175, 95 S.Ct. 896,906, 43 L.Ed.2d 103 (1975); People v. Laudermilk, 67 Cal.2d 272,61 Cal.Rptr. 644, 431 P.2d 228 (1967); Brown v. State,346 N.E.2d 559 (Ind. 1976). See also Goulden v. State, 53 Ala. App. 276, 299 So.2d 321 (1974); Moore v. State, 52 Ala. App. 179,290 So.2d 246 (1974).
Despite counsel's continuing opinion that the appellant was insane, there is no evidence to indicate that the mental condition of the appellant at the time of the trial was different from what it was at or about the time of the sanity inquisition. United States v. Ives, 504 F.2d 935 (9th Cir. 1974). The trial judge is entitled to rely upon the jury determination of the competency of the accused to stand trial where a determination or inquisition has been instituted and completed pursuant to Title 15, § 426, absent a change in the mental condition of the accused and absent new or additional facts which would create a reasonable or bona fide doubt of his mental competency. In reviewing the failure of the trial court to order a second competency investigation we have searched the record for any indication which would raise a reasonable doubt.
 "There are of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychologists can entertain on the same facts." Drope, supra, 420 U.S. 179, 95 S.Ct. 908.
See also Greenwood v. United States, 350 U.S. 366, 375,76 S.Ct. 410, 415, 100 L.Ed. 412 (1956) noting "the uncertainty of diagnosis in the field and the tentativeness of professional judgment".
We have also considered other factors which might illuminate this issue. At the hearing of the motion for new trial the appellant was able to participate in his defense to the degree that his own attorney requested and the court allowed him to ask questions and participate in the presentation of his grounds for a new trial.
Any delay in bringing the appellant to trial after his competency hearing was occasioned by the request of his own attorneys for a continuance. There was no request for a second competency determination.
Even though the question may be raised on the court's own motion, the failure of defense counsel to request a second sanity determination is of definite significance where the trial court's failure to order an inquiry on its own motion is under review. Magenton v. State, 76 S.D. 512, 81 N.W.2d 894
(1957).
From the record before this court it does not clearly and convincingly appear that the appellant was incapable of standing trial, State v. Lucas, 30 N.J. 37, 152 A.2d 50 (1959), or that the trial court acted in an arbitrary manner or abused its discretion in failing to initiate a second inquiry into the question of the competency of the accused to stand trial.United States v. Maret, 433 F.2d 1064 (8th Cir. 1970). The purpose of the statute and the constitutional requirement that some determination be made is for the protection of the accused. United States v. Muncaster, 345 F. Supp. 970 (D.C.Ala. 1972). They are not intended to furnish a technical means of nullifying judgments solemnly reached by the judicial process.Van Dusen v. State, 197 Kan. 718, 421 P.2d 197 (1966). Following the first competency hearing the record reveals no manifestations of incapacity which were so obvious that the trial court could not fail to have been unaware of them.Richards v. Commonwealth, Ky.App., 517 S.W.2d 237 (1974). *Page 37 
We recognize that a competency determination, while evidence as to the defendant's condition, is by no means conclusive in the light of new or additional evidence. The court's responsibility to prevent the trial of an accused unable to assist in his defense is an ongoing one. State v. Spivey,65 N.J. 21, 319 A.2d 461 (1974).
Applying the principles discussed above, it is our finding that the failure of the trial court to order a second determination of the competency of the accused to stand trial on its own motion was not error where there was no indication that the conduct of the accused had changed since the original competency hearing and no new or additional facts were presented to the trial judge which would raise a reasonable doubt of the appellant's competency.
 II
The appellant contends that his motion for a new trial was due to be granted after it allegedly was shown that a member of the jury suffered from habitual drunkenness.
Title 30, § 21, Code of Alabama 1940, Recompiled 1958, prohibits the empaneling as a juror of an individual who is an habitual drunkard. On the hearing of the motion for new trial, one juror was "unavailable" because he was intoxicated. Defense counsel stated that this same juror was charged with driving while intoxicated in 1971 but failed to introduce any evidence on this point.
Both the testimony of this juror and his roommate during the trial refute any implication that alcoholic beverages were consumed during the course of the trial.
Furthermore, the appellant did not sustain his burden of proof in showing that the juror was an habitual drunkard.
 "Habitual drunkenness is drunkenness repeated at intervals, whether regular or irregular, for such a length of time that it can be said with reasonable assurance that such actions will be continued. It need not be the uniform or unvarying rule, but, to be habitual, must be the ordinary course of conduct — the general rule or custom. Occasional exceptions do not destroy the rule, but unless, when occasion offers, there is a disposition or probable inclination to drink to excess, intemperate habits cannot be predicated. If the rule or habit is to drink to intoxication when occasion offers, and sobriety or abstinence is the exception, the condition of habitual drunkenness exists. State v. Robinson, 20 So. 30, 31, 111 Ala. 482, citing Tatum v. State, 63 Ala. 147, 152; Stanley v. State, 26 Ala. 26; Smith v. State, 55 Ala. 1, 10; (additional citations omitted)." West, Words and Phrases, Vol. 19, p. 48.
Proof that one has been intoxicated on two occasions does not qualify that individual as an "habitual drunkard". III
The appellant additionally contends that he did not receive a fair trial because of various acts of misconduct by the jurors.
A. On the hearing of the motion for new trial juror John Kennedy testified that he
 "was under the impression they had already tried him on that being sane or insane. That was the impression I was under that they were just trying him to be guilty or not on this case, the way I understood it."
However, Mr. Kennedy testified to having read the extensive medical records of the appellant submitted into evidence.
After a case has been submitted to the jury, their deliberations in the jury room are not subject to review. Gamble, McElroy's Alabama Evidence, 3rd Ed., § 94.06, p. 207. Public policy forbids that a juror disclose deliberations in the jury room and demands that they be kept secret. Taylor v.State, 18 Ala. App. 466, 93 So. 78 (1922); Harris v. State,241 Ala. 240, 2 So.2d 431 (1941). Permitting such impeachment would open the door for tampering with the jury after the return of their verdict. Hawkins v. United States, 244 F.2d 854, 856
(C.A.Va. 1957). *Page 38 
Consequently a jury's verdict is not subject to impeachment by the testimony of jurors as to matters which transpired during the deliberations. Fox v. State, Ala. Cr.App.,269 So.2d 917 (1972). A juror may not, either in impeachment or in support of his verdict, testify as to his mental operation in reaching the verdict.
 "But in order to sustain a verdict of the jury, for the affidavits of the jurors to be admissible they must be with respect to facts and occurrences open to the observation of other jurors so that they may be subject to contradiction, for the rule does not permit evidence by the jurors `of their own mental operations by disclosing the grounds of, or the reasons for, their verdict, the discussions which took place in the jury room, or the motives or influences which affected their deliberations and decision, by denying that they were affected by matters which might, if their effect was prejudicial to the moving party, furnish grounds for a new trial, or by asserting that they disregarded improper instructions by the court or incompetent material evidence which was before them and was not seasonably withdrawn or excluded'." Birmingham Electric Co. v. Yoast, 256 Ala. 673, 678, 57 So.2d 103, 107 (1951).
Clearly the appellant's attempted impeachment of the jury's verdict by showing the mental operation of one juror was improper and not subject to judicial recognition.
B. The appellant maintains that "the conversations between jurors on each day of defendant's trial, though not explicit in terms from the face of the record, carry the taint of mutual reinforcement of fixed opinions on a verdict which was later to be rendered". It is asserted that the premature deliberation denied the appellant a fair trial.
From the record it appears that at least two jurors discussed some of the evidence, but not the guilt or innocence of the appellant, prior to the time the actual deliberations of the jury were begun.
Each case of alleged improper conduct of jurors during trial and deliberation must be judged by its peculiar facts. Bell v.State, 227 Ala. 254, 149 So. 687 (1933). There is no evidence that the verdict of the jury was not based solely on the evidence adduced on trial and was not absolutely free from outside influences. Although several jurors may have commented on the evidence during the trial and before the actual deliberations began we fail to see that such conversations carried "the taint of mutual reinforcement of fixed opinions" on the verdict. The record reflects that the guilt or innocence of the appellant was not prematurely considered.
C. The trial of the appellant began on March 16, 1976 and ended on the 18th when the jury returned a verdict of guilty. The appellant objects to the short period of deliberation and complains that no juror gave serious consideration to the exhibits concerning the mental competence of the appellant. The jury deliberated one hour and sixteen minutes. At least three jurors testified that they considered the extensive medical records dealing with the competency of the appellant. However the verdict may not be impeached by testimony of the members of the jury panel as to things said and done in the jury room.Hooks v. State, 45 Ala. App. 221, 228 So.2d 833 (1969). A juror may not testify to impeach the verdict as to how certain testimony was considered in the jury room. Harrison v. Baker,260 Ala. 488, 71 So.2d 284 (1954). A juror cannot testify that certain evidence was or was not influential. The rule is that evidence of what a juror thought, or why he agreed to a verdict, may not be received to impeach the finding. New MorganCounty Building Loan Ass'n v. Plemmons, 210 Ala. 286,98 So. 12 (1923).
D. Although the jury only deliberated one hour and sixteen minutes, this is not ground for a new trial. Bolden v. UnitedStates, 63 App.D.C. 45, 69 F.2d 121 (1934).
 "In the absence of circumstances evidencing passion or prejudice, the mere fact that the jury reached a verdict of guilty *Page 39 
quickly does not show such misconduct, bias, or undue haste as to warrant a new trial, at least where the verdict is warranted by the evidence." 24 C.J.S. Criminal Law § 1449 (24), p. 146.
See also State v. Terrell, 175 La. 758, 144 So. 488 (1932) (jury returned verdict within 18 minutes in case requiring four days to try); Reed v. State, 168 Ga. 731, 149 S.E. 23 (1929) (jury deliberated fifteen minutes in case involving voluminous evidence); Curry v. State, 96 Tex.Cr. 267, 257 S.W. 269 (1924) (jury deliberated less than twenty minutes); State v. Balfany,50 S.D. 530, 210 N.W. 722 (1926) (jury out ten minutes).
The evidence was of such a conclusive character that there was little occasion for deliberation on the part of the jury. Certainly it may not be said that there was an abuse of discretion by the trial judge in denying the motion for a new trial.
 IV
The appellant maintains that he was illegally restricted in his cross examination of two witnesses concerning an eye-witness account of the firing of the alleged murder weapon and the investigating officer's account of the extent of the investigation of the murder.
The control of cross examination is within the discretion of the trial judge only after a party has had an opportunity substantially to exercise his right of cross examination. Dixonv. United States, 333 F.2d 348 (5th Cir. 1964). However the trial court has the discretion to reasonably limit the range of cross examination in respect to matters which are repetitious or argumentative. A trial is not meant to be an eternal phenomenon. Buckelew v. State, 48 Ala. App. 411, 265 So.2d 195
(1972). Trial judges have unlimited discretion to cut off questions on cross examination which are repetitious, concern wholly collateral matters, are irrelevant, or are harassing, annoying, or humiliating. Ball v. State, Ala.Cr.App.,337 So.2d 31, cert. quashed, 337 So.2d 39 (1976).
The right to a thorough and sifting cross examination does not entitle a party to repeat questions that have already been definitely and fully answered. Proctor v. State, Ala.Cr.App.,331 So.2d 828 (1976).
Following these principles we find that the trial judge did not infringe on the right of the appellant to a full and fair cross examination.
 V
The appellant finally argues that the verdict in this case is contrary to the great weight of the evidence. The testimony presented by the state made out a prima facie case of murder in the first degree and the guilt or innocence of the appellant was properly submitted to the jury. The appellant's stepfather testified that on the morning of September 29, 1974, he was in bed at his home when he heard a pistol go off. His wife came into the room and fell to her knees. The appellant then came in and shot her again in the back. This evidence alone presented a question of fact for the jury.
We have searched the record and finding no error prejudicial to the substantial rights of the appellant, the judgment of the trial court is due to be and is hereby
AFFIRMED.
All Judges concur.