183 So. 433

## BROTHERS v. STATE.

### 7 Div. 463.

Supreme Court of Alabama.

June 30, 1938.

Rehearing Denied Oct. 6, 1938.

Rains & Rains and Motley & Motley, all of Gadsden, for appellant.

A. A. Carmichael, Atty. Gen., and Wm. H. Loeb, Asst. Atty. Gen., for the State.

BOULDIN, Justice.

Bay Brothers was indicted for the murder of Dessie Brothers, his wife; was convicted of murder in the first degree and his punishment fixed at death.

The defendant was indicted by the name of "Bay Brothers, whose Christian name is unknown to the grand jury other than as stated."

■ The motion to quash the indictment on the ground that defendant was not indicted by his true name, and giving his true name as Israel Isiah Brothers was properly overruled.

The evidence without dispute disclosed that he was commonly known as and called "Bay Brothers." So far as appears he was not called by any other, even by his parents and the members of his family.

The name is for the purposes of identification. When the name by which he is generally known and called is stated in the indictment, the added words as above may be treated as surplusage and entirely disregarded. Wells v. State, 88 Ala. 239, 7 So. 272; 1 Bish. Co. Pleading, § 487; Heard's Co. Pleading, §§ 135, 136.

The trial was had on a plea of not guilty, and a plea of not guilty by reason of insanity.

The State's evidence touching the homicide was to the following effect: Defendant, while drunk, often abused his wife and children; they frequently fled to the home of Lee McElroy, whose wife was a sister of Mrs. Brothers. On Friday night before the killing on the following Wednesday morning he followed them to the McElroy home, went through the rooms turning down the cover of beds until he found his wife, and began throwing missiles at her, whereupon Lee McElroy struck him on the head with a hammer. This blow, not serious, stopped him. He disappeared. His wife and children remained at McElroy's until Tuesday, when they returned home. Before day light on Wednesday morning, he entered his home with a shot gun, fired on and killed the deceased. After she had fallen he grabbed a hammer and beat her person.

He then fled with the gun and remained in hiding until arrested several weeks later.

The killing in the manner outlined was not controverted.

The defense mainly relied upon was under the plea of insanity.

Some evidence under the plea of not guilty went to the question of mitigation on the theory that defendant was so drunk at the time of the killing as to be incapable of entertaining the specific intent essential to a conviction of murder or murder in the first degree.

A great many exceptions were reserved to rulings on evidence.

Glen Brown, a police officer, arriving at the scene about daybreak, testified, over objection and exception that the body of deceased was exposed from the hips down. He further testified to blood on the person, and stains indicating a struggle after deceased was shot.

■ This testimony of the condition of the clothing in connection with the other facts disclosed was admitted without error. This was evidence of matters at the scene of the crime tending to shed light on the nature and character of the slaying. Madley v. State, 192 Ala. 5, 68 So. 864.

The State, over repeated objections and exceptions, was permitted to go at length into the abusive conduct of defendant toward his wife, when drinking, including previous assaults, threats, accusations of infidelity; as well as abuse and beating of the children, their leaving home, their appearance of fright, etc.

In dealing with wife murder there are two recognized rules of law in the admission of testimony of this character.

■ The motive for the killing is always a proper subject of proof. In the case of husband and wife the normal relation of affection and lack of motive may be shown to have given place to anger, hate, resentment and jealousy, evidenced by words and conduct such as disclosed by the evidence in question. Fowler v. State, 155 Ala. 21, 45 So. 913; Smith v. State, 92 Ala. 30, 9 So. 408; Reeves v. State, 201 Ala. 45, 77 So. 339; 30 C.J. 184, § 408.

A still wider range of evidence is allowable when reliance is had upon a plea of insanity.

■ Thus in Anderson v. State, 209 Ala. 36, 42, 95 So. 171, it is said (page 178):

"It has become a maxim of the law that in cases where insanity is relied upon as a defense, 'Every act of the party's life is relevant to the issue.' Howard v. State, 172 Ala. 402, 410, 55 So. 255, 257, 34 L.R. A. (N.S.) 990; Wright v. Tatham (1838)

Clark & F. 670, 715, 722; 1 Greenl. on Ev. (16th Ed.) p. 58."

Further discussion in that case sustains the view that any words or conduct of deceased shedding light on the question of sanity are admissible although they disclose other criminal acts of the defendant. See, also, Birchfield v. State, 217 Ala. 225 115 So. 297; Russell v. State, 201 Ala. 572, 78 So. 916.

This is not to say the court has no discretion as to the length to which these matters may be drawn out. Nor should evidence be permitted as to other and distinct offenses which sheds no light on the question of sanity or insanity. The rule that a man is not on trial for all the misdeeds of his life, not required to prepare for a defense against other charges, is not to be ignored and evidence which is calculated merely to bias the jury against him should be refused. The jury on request should be instructed as to the limited purpose for which such evidence is to be considered. Spicer v. State, 188 Ala. 9, 18–20, 65 So. 972.

In the case at bar the defendant offered evidence intended to show mental debility from the time of defendant's youth; other evidence of hereditary taint. This evidence dealt with insanity among collateral relatives. Evidence of habitual drunkenness coupled with hereditary predisposition culminating in a diseased state of mind rendering him irresponsible under the doctrine of the Parsons Case, Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am.Rep. 193, was the trend of such testimony.

We may say here, the solution of this question was for the jury. We find no error in the rulings on the competence of non-expert witnesses. Parrish v. State, 139 Ala. 16, 36 So. 1012.

In this state of the evidence the State was entitled to cover like periods of time in adducing evidence of sanity, normal intelligence in the conduct of affairs, or even a sense of responsibility for his criminal acts.

Under the principles we have discussed we are of opinion there was no error in admitting evidence that on a former occasion defendant was indicted for assault upon his wife with intent to murder; that he fled to another state, went under an assumed name; took his family with him to remove them as witnesses, and sought to persuade them to suppress or falsify their testimony. All this is some evidence of consciousness of guilt by a sane mind, a sense of responsibility for his deeds.

That he assaulted his wife on this trip was admissible on grounds before indicated. That a kinswoman presented a gun and threatened him on that occasion to protect his wife, we think, could well have been refused as evidence. But the rules limiting evidence to the mere fact of a difficulty, excluding details, is not so exacting upon the issue of sanity vel non. A measure of discretion must be allowed the trial judge in the extent to which details shall be allowed.

We do not find reversible error in receiving this evidence of the act and threatening words of the kinswoman. For like reasons we do not find error to reverse in admitting evidence of defendant's fifteen year old son to the effect that he hit his father with a chair when he had the boy's mother down on the bed beating her, with a drawn knife in his hand.

A prosecuting attorney, seeking to enforce the law, is not beyond the bounds of legitimate argument in branding the accused as a murderer, etc., when that is the very crime for which he is seeking a conviction, and evidence reasonably supports an inference of his guilt in the highest degree.

The argument "The defendant was sitting around looking at the floor and faking insanity," is challenged on the ground that it invades the constitutional guarantee against compelling one to be a witness against himself, and the statutory inhibition against comment on the failure of the defendant to testify.

Whether the defendant was faking insanity was a primary inquiry in the case. If, instead of taking the stand, he was seeking to make evidence for himself by his demeanor before the jury, this was the legitimate subject of comment.

The trial court was in position to see whether this line of argument was within the rule that counsel may draw any inference which the facts tend to support. The conduct of accused during the trial is a proper subject of comment. 1 Thompson on Trials, § 989; Inman v. State, 72 Ga. 269, 277, 278.

■ The jurors were the judges as to whether such inference was well founded.

The connection in which the special prosecuting counsel said: "We ought to tear the electric chair down and build a monument to John Dillinger and 'Baby Face' Nelson" does not appear.

■ It cannot be said such remarks would be out of bounds in any and every connection.

■ We cannot approve 'the following statement in argument:

"Remember, gentlemen of the jury, if you make a mistake and impose a higher punishment on Bay Brothers than you should, there is a higher court that will correct it, but if you impose a lessor punishment, there is no appeal." See 16 C.J. 907, § 2254.

This is clearly a misstatement, not of fact, but of law. State's counsel was insisting on the death penalty. That this court on appeal could and would deal with the degree of the punishment fixed by the jury should have been promptly excluded on objection. Instead the objection was overruled.

The vice of such argument is that it is an invitation to shift their responsibility; a responsibility which is theirs alone.

■ Upon consideration of the whole record, however, we are not impressed this argument had a harmful effect which should result in a reversal.

A very clear and forceful oral charge throughout stressed the duty and responsibility of the jury to determine from the evidence the question of guilt vel non, as well as the degree of guilt, and their duty to fix the punishment. A large list of given charges stressed the safeguards and cautions which the laws provide on behalf of the accused.

We have considered the manifold questions raised by the record, as well as those presented in brief, and find no reversible error. Further discussion of such rulings is not deemed necessary.

Affirmed.

All Justices concur.

The date for executing the sentence of the law having passed, it is ordered that Friday, August 26, 1938, be and is set as the date for execution of the death sentence.