Appellant was convicted of second degree murder for the pistol slaying of her husband and was sentenced to forty years' imprisonment in the State penitentiary. Appellant pleaded not guilty and not guilty by reason of insanity at arraignment in the presence of counsel. Upon being sentenced appellant gave oral notice of appeal. She also filed a motion for new trial which was subsequently denied. Appellant has been furnished with appointed counsel, her trial counsel, and has been provided with a free transcript on this appeal.
The State's evidence was sufficient to prove beyond any reasonable doubt that appellant murdered her husband by shooting him with a pistol. Testimony by State witnesses established that appellant left her place of employment at Redstone Arsenal in Huntsville around 10:00 a.m. on Thursday, September 28, 1978, for a "doctor's appointment" after obtaining permission from her supervisor, Mr. O.C. Ashworth. Appellant was "quite calm" at the time. Around 10:30 a.m. appellant and the deceased arrived at the office of Anthony H. Capowski, a psychiatric social worker, whom they had seen the previous two Thursdays for "family problems".
According to Mr. Capowski and other witnesses, appellant suspected that the deceased was being unfaithful to her and was attempting to poison her. Mr. Capowski stated that there were "areas of irrationality in her," but that there "were a lot of places where she was rational." Specifically, appellant had associated certain colors with particular emotions, such as the color red being an indication the deceased "wanted to fight." Appellant and the deceased left Mr. Capowski's office at 11:30 a.m. In his opinion, appellant was not psychotic when she left.
A neighbor of the appellant and the deceased saw appellant "coming out of her house going towards the car" at 12:00 noon. The neighbor heard the deceased "talking loud" as appellant walked to the car. Appellant called Versie Cole, her minister's wife, at 12:45 p.m. to pick up her son from school that afternoon. Mrs. Cole stated that that was the only telephone conversation she had ever had with appellant. *Page 1132 
Appellant returned to work later that afternoon and sat at her desk with a wet paper towel on her forehead. She told a co-worker that her appointment "didn't go so good, before it was all over my husband got mixed up in it and everything ended up in a big mess." Appellant had asked another co-worker three days earlier whether "they still have the death penalty in Alabama? . . . I need to find out about that."
Around 3:00 that afternoon, in the presence of several eyewitnesses, appellant entered Mr. Ashworth's office and shot him with her pistol. Appellant had previously filed a formal complaint charging him and several other men in the office with sexual misconduct. The allegations were later determined to have no foundation. Testimony regarding these charges revealed that appellant had made the allegations in a ploy to obtain a promotion which was undeserved. After shooting Mr. Ashworth appellant was asked did she want someone notified. Her response was, "Yes, you can call my mother in Decatur, she's my next of kin now." She gave her mother's telephone number from memory.
The deceased's body was discovered by his sister at his and appellant's house after appellant had been arrested for shooting Mr. Ashworth. Appellant subsequently confessed to Huntsville Police that she had shot the deceased, but that she had fired in self-defense.
During the course of the trial, there was considerable testimony concerning appellant's mental condition. Evidence was presented by expert and lay witnesses on behalf of the State and the defense as to the appellant's sanity at the time of the commission of the crime. Without setting out the testimony of each witness, it is sufficient to say there was a conflict in the evidence. We find, however, that the testimony of the witnesses for the appellant did not constitute a "preponderance of the evidence" that appellant was legally insane at the time of the commission of the crime. In order to overcome the presumption of sanity, the appellant must prove by a preponderance of the evidence that she was in fact insane when the crime was committed. Christian v. State, 351 So.2d 623
(Ala. 1977); Jerome Vincent Berard v. State, Ala.Cr.App.,401 So.2d 1044, [1980]; Woods v. State, Ala.Cr.App.,364 So.2d 1178, cert. denied, 364 So.2d 1186 (Ala. 1978). The determination against appellant of that issue was clearly within the province of the jury and was fully supported by the State's evidence.
Appellant's primary contention on appeal is that the State during closing argument impermissibly commented on her failure to testify. For the sake of clarity those portions of the argument that are referred to are here set out in their entirety:
 "MR. SIMPSON: They made reference after reference about what went on during the break, something was said out here, a question about didn't I see you and some other gentlemen going to the bathroom and you all were talking together. They bring this defendant here and here she sits, quietly, calmly, never says — move her head or nothing, with her head down.
"MR. CLOUD: We object to that.
"THE COURT: Overruled.
"MR. CLOUD: We except.
* * * * * *
 "MR. SIMPSON: And what is that supposed to show, that she is totally insane during this minute at this trial, that she can't talk, that she doesn't have any personality, that she is not normal, but during the break, she gets up and goes over here with her friends and her family and talks to them and carries on a normal life. And why the rhubarb of sitting here in the trial in this condition and act like she is not even competent enough to speak to her family and do it outside the presence of the jury. And who is playing games with who in a trial of this nature, as if I dreamed up for my own personal benefit that a citizen is dead in this community. "MR. CLOUD: If the Court please, we object to the comments and statements made by the District Attorney about the defendant. *Page 1133 
"THE COURT: Overruled.
"MR. CLOUD: We except."
It is a basic principle of law that once a defendant chooses not to testify at his trial the exercise of that choice is not subject to comment by the prosecution. Griffin v. California,380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Unless this principle is observed with the strictest of scrutiny this court has no alternative but to reverse and remand an accused's conviction. Qualls v. State, Ala.Cr.App., 371 So.2d 949, cert. denied, 371 So.2d 951 (Ala. 1979); Lamberth v. State,54 Ala. App. 233, 307 So.2d 43 (1975).
Appellant in this case relies on Hall v. State,364 So.2d 866, 867 (Fla.App. 1978), where a reversal was mandated because of a prosecutor's remark during closing argument that the defendant was "sitting over here quietly." (Emphasis added) However, it must be pointed out that in Hall, supra, there is no indication in the opinion that the defendant was relying on the defense of insanity. Furthermore, in Hall, supra, the prosecutor's remark could have been made for no other reason but to draw attention to the defendant's failure to testify. The facts in the case at bar are distinguishable.
The conduct of the accused or the accused's demeanor during the trial is a proper subject of comment. Brothers v. State,236 Ala. 448, 183 So. 433 (1938). In Brothers, supra, a case not unlike the instant case, the defendant pleaded not guilty and not guilty by reason of insanity. There, our Supreme Court, speaking through Justice Bouldin, wrote:
 "The argument `The defendant was sitting around looking at the floor and faking insanity,' is challenged on the ground that it invades the constitutional guarantee against compelling one to be a witness against himself, and the statutory inhibitions against comment on the failure of the defendant to testify.
 "Whether the defendant was faking insanity was a primary inquiry in the case. If, instead of taking the stand, he was seeking to make evidence for himself by his demeanor before the jury, this was the legitimate subject of comment.
 "The trial court was in position to see whether this line of argument was within the rule that counsel may draw any inference which the facts tend to support. The conduct of accused during trial is a proper subject of comment. 1 Thompson on Trials § 989; Inman v. State, 72 Ga. 269, 277, 278."
On review of these portions of the prosecutor's argument which have been preserved for our consideration, we cannot say that the District Attorney's comments were made to draw attention to appellant's failure to testify. In light of the principles stated in Brothers, supra, we hold that the District Attorney's remarks were references to the accused's demeanor
during trial and were, thus, a proper subject of comment.
Appellant next argues that reversible error occurred during the following testimony by State rebuttal witness B.J. Nealey:
 "Q. All right, and could you tell us what, when a person is on leave from South Central, what benefits they have, if they're just on leave from the company?
 "MR. CLOUD: We object to that, there's no probative value on this case, the benefits of any person on leave from South Central Bell.
"MR. SIMPSON: We expect to tie it up, Your Honor.
"THE COURT: Overruled.
 "A. She's considered to still be employed by the company and one thing she gets is a 40% concession on her telephone service while she's on maternity leave until she returns."
Mr. Nealey had previously testified without objection that appellant had been employed by South Central Bell from July of 1973 until June of 1974 and that, during her employment, she had requested an extension of maternity leave after her baby was born and after she had requested to come back to work. Mr. Nealey also testified without objection that appellant never *Page 1134 
came back to work for South Central Bell, that she was terminated from the company after an investigation revealed that she was working at Redstone Arsenal. Mr. Nealey stated that appellant, while on maternity leave, became employed with the United States Army without notifying South Central Bell.
On appeal appellant contends that the testimony proffered over her objection was an attack on her character where she had not placed her character at issue. We disagree with appellant's argument.
In the first instance, the trial court's overruling of appellant's objection to the State's examination of Mr. Nealey must be considered harmless error at most. A.R.A.P., Rule 45. What benefits a person might have from South Central Bell while on leave from that company can in no way be interpreted as an attack on that person's good character. Any question of remoteness, which appellant attempts to raise in brief, or any question which might be interpreted as an attack on her character was not objected to at trial. Thus, no error in that regard was preserved for review.
In addition, as is stated in Brothers, supra, "It has become a maxim of the law that in cases where insanity is relied upon as a defense, `Every act of the party's life is relevant to the issue.'" 183 So., at 435, and authorities cited therein. As was stated by our Supreme Court in Parvin v. State, 248 Ala. 74,26 So.2d 573, 574 (1946):
 "On the issue of insanity, proof of the acts, conduct and declarations of the accused is not confined to those at the time of the crime, but includes previous and subsequent ones, as well, which have a tendency to shed light on his state of mind when the act was committed."
In the case at bar appellant attempted to show through various defense witnesses that she had become insane over a period of time. The fact that she had been calculating and manipulative, if not dishonest, in her employment relationships at Redstone Arsenal and earlier at South Central Bell was evidence tending to refute her plea of insanity and was relevant, at least, in placing fixed dates on which she clearly was not insane. This was not an attempt by the State as inWatts v. State, 282 Ala. 245, 210 So.2d 805 (1968), to introduce prior convictions of the appellant. In short, we hold that the evidence of which appellant complains was properly admissible.
In addressing appellant's final issue, case law makes clear that the procedure outlined in Ala. Code § 15-16-21 (1975) is not the only way the competency of an accused to stand trial may be determined. Seibold v. Daniels, 337 F. Supp. 210
(M.D.Ala. 1972); Atwell v. State, Ala.Cr.App., 354 So.2d 30, cert. denied, 354 So.2d 39 (Ala. 1978). We see no reason to here restate the alternative methods set out in those opinions, which a trial court has available for determining an accused's competency. Suffice it to say that in the instant case the trial court followed an alternative method from Section15-16-21, Code 1975, in conformity with Atwell, supra. Appellant was examined by a team of experts, including a psychiatrist, at Bryce Hospital and was found to be competent to stand trial.
And for the same reasons outlined in Atwell, supra, we hold that the trial court did not abuse its discretion in failing to initiate a second inquiry into the question of appellant's competency to stand trial. We find that the requirements ofPate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815
(1966), were fully complied with.
We have considered each issue raised by appellant. In addition, we have searched the record, as required by law, for errors injuriously affecting the substantial rights of the appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur. *Page 1135