554 So.2d 1073 (1984)
Arthur Lee GILES, alias
v.
STATE.
6 Div. 86.
Court of Criminal Appeals of Alabama.
January 10, 1984.
On Return to Remand January 22, 1985.
Rehearing Denied December 9, 1986.
*1076 Dennis N. Balske and John L. Carroll, Montgomery, for appellant.
Charles A. Graddick, Atty. Gen., and Thomas R. Allison and Edward Carnes, Asst. Attys. Gen., for appellee.
HARRIS, Judge.
In his first trial, Arthur Lee Giles, the appellant herein, was indicted for and convicted of the double murder of Willene and Carl Nelson, pursuant to § 13-11-2(a)(10), Code of Alabama 1975, and sentenced to death by electrocution. His conviction and sentence were overturned, however, and he was granted a new trial on the authority of Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), on remand, Beck v. State, 396 So.2d 645 (Ala.1980). Giles v. State, 405 So.2d 50 (Ala.Cr.App. 1981). His second trial, conducted in compliance with Beck v. State, 396 So.2d 645 (Ala.1980), also resulted in a conviction for capital murder and a sentence of death by electrocution. This appeal is from the second capital murder trial of this appellant.
Most of the gruesome details surrounding the double murder of Carl and Willene Nelson are sufficiently stated in Giles v. State, 440 So.2d 1237 (Ala.Cr.App.1983), and Jones v. State, 520 So.2d 543 (Ala.Cr. App.1984), two recent opinions involving offenses arising out of the same series of events as the instant offense. Only a brief summary of those details and additional facts pertinent to the instant appeal need be stated herein.
The appellant and his accomplice, Aaron Jones, traveled to the home of Willene and Carl Nelson in the early morning hours of November 10, 1978, with the intention of robbing the Nelsons. While at the Nelsons' home, the appellant and Jones, in concert, shot or stabbed all six occupants: Carl and Willene Nelson; their three children, Tony, Brenda and Charlie; and Carl's mother, Annie M. Nelson. When the appellant and Jones left, Carl and Willene Nelson were dead and the other four victims were seriously wounded. It is undisputed that the appellant did all of the shooting, including the shooting of Willene and Carl. In his confession, after admitting the shooting, the appellant explained that all of the victims were alive when he finished shooting. He further explained that Jones entered the room after the shooting was completed and suggested that they stab the victims to eliminate any witnesses and that Jones went to the kitchen and retrieved a butcher knife, with which Jones completed the bloody massacre.[1] Therefore, the only material factual distinctions between the prosecution's theory and the appellant's theory in defense involve appellant's intent and the question of who actually inflicted the fatal blows to both Willene and Carl Nelson.
The appellant contends, for the record, that the Alabama Supreme Court's "rewrite" of the Alabama death penalty statute in Beck v. State, 396 So.2d 645 (Ala. 1980), was an unconstitutional usurpation of the legislature's power, but he concedes, and we agree, that this issue has been decided against him by Clisby v. State, 456 So.2d 86 (Ala.Cr.App.1982), affirmed in part, reversed in part and remanded on other grounds, 456 So.2d 95 (Ala.1983), and its progeny.
Appellant's argument that the trial judge should have recused himself simply because he had sentenced the appellant to death by electrocution at appellant's first trial for the instant offense is also without merit. See, Whisenhant v. State, 482 So.2d 1225 (Ala.Cr.App.1982), affirmed in part, remanded with directions on other grounds, 482 So.2d 1241 (Ala.1983). Contrary to appellant's argument, the trial judge's findings with regard to mitigating circumstances do not reveal, or even imply, any prejudice against the appellant.
The appellant contends that the trial court erred in denying his motion for a change of venue. We disagree.
In support of his motion the appellant presented the results of an opinion survey *1077 conducted by William M. Kimmelman, a professor with the University of Alabama in Birmingham. Kimmelman testified that a random sample of the 27,000 potential jurors in Blount County, Alabama, was selected for the survey. The results revealed that 85 percent of the 397 potential jurors surveyed had heard about the double murder of Willene and Carl Nelson, either from friends, co-workers, or relatives, or through the news media, but only 17 percent of those interviewed felt that they were "very familiar" with the details and events surrounding the crime. Kimmelman admitted that only 16 percent of those who had heard about the crime had heard something within the 18 months immediately preceding the November 5, 1982, survey. The survey did not reveal any clear, unambiguous evidence of prevailing prejudice against the appellant.
With the results of this survey in mind, the trial court deferred ruling on appellant's motion until after voir dire of the prospective jurors at trial. In light of the survey results the trial court permitted a thorough and sifting voir dire of all prospective jurors, including panel interviews and individual voir dire. The results of these voir dire examinations encompass nearly 400 pages of the record on this appeal.
We have thoroughly reviewed the voir dire testimony and have made several conclusions therefrom. Nearly all of the prospective jurors had heard of the widely publicized double murder at the Nelson home, but few remembered any details of the incident. Some of the prospective jurors had read about appellant's first trial and were aware of his previous conviction and a few knew that he had been sentenced to death. One prospective juror indicated that he had a fixed opinion against the appellant, and he was, for that reason, dismissed from the venire. None of the other prospective jurors expressed any prejudice against the appellant, although a few felt that their prior knowledge of the crime might affect their verdicts. The morning after the individual voir dire had been completed, but before the trial court had ruled on the "challenges" of particular prospective jurors, all of the members of the venire indicated that they could lay aside any prior knowledge of the case and return a verdict based upon the evidence presented in court.
The trial court then dismissed a number of prospective jurors "for cause" in response to challenges by either the appellant or the state. In finally denying appellant's change of venue motion, the trial court concluded that those prospective jurors remaining on the venire, after dismissal of those properly challenged, could give the appellant a fair trial.
There was no evidence of any actual prejudice against the appellant among those persons who eventually served on appellant's jury.
The trial court's denial of appellant's change of venue motion was a determination which, absent abuse, was within its sound discretion. Ex parte Magwood (Magwood v. State), 426 So.2d 929 (Ala. 1983), affirming, 426 So.2d 918 (Ala.Cr. App.1982), and cases therein cited; Lopez v. State, 415 So.2d 1204 (Ala.Cr.App.1982). Under the circumstances outlined above there was no abuse of discretion and, therefore, no error by the trial court. See, Magwood v. State, supra; Anderson v. State, 362 So.2d 1296 (Ala.Cr.App.1978); Moulds v. State, 426 So.2d 942 (Ala.Cr.App.1982).
Appellant's public opinion survey, if accurate, demonstrated that publicity of the instant crime was widespread in Blount County, Alabama, especially during the months immediately following the incident, and that the residents of Blount County were generally aware of the double murder in their county. However, the survey was inconclusive, and did not reveal any inherent or pervasive prejudice against the appellant that mandated a change of venue. See, Callahan v. State, 471 So.2d 447 (Ala. Cr.App.1983), and cases cited therein. To the contrary, the survey revealed that most of the people surveyed remembered little about the crime and, in fact, had heard nothing about it for the eighteen months preceding the survey. Clearly, the passage of time had diminished any prejudicial effects *1078 of the widespread publicity.[2]See, Magwood v. State, supra; see also, Robinson v. State, 430 So.2d 883 (Ala.Cr.App. 1983), and cases therein cited.
Furthermore, individual voir dire of the prospective jurors at trial revealed that only one member of the venire had a fixed opinion against the appellant. That prospective juror was properly challenged and dismissed. The other members of the venire, although some were also challenged and dismissed, indicated either that they had little or no knowledge of the crime or that they could lay aside any preconceived notions about appellant's guilt and render a verdict based on the evidence presented in court. These circumstances demonstrate compliance with the juror fairness and impartiality standards outlined in Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). See, Anderson v. State, supra, and cases therein cited; Moulds v. State, supra. As in Murphy, Anderson, and Moulds, the appellant, herein, has failed to prove that, due to inherent or actual prejudice, he did not receive a fair and impartial trial. The trial court was, therefore, justified in denying his change of venue motion.
During the panel voir dire of thirteen prospective jurors, one of the prospective jurors asked the prosecutor whether or not the jury would make the final sentence determination. The prosecutor responded that "there is always appeal and things like that. And the Judge would make a decision after ya'll [the jurors] make the decision." The appellant requested that those thirteen jurors be dismissed from the venire because the prosecutor had impermissibly informed them of the possibility of subsequent review of the jury's sentence verdict. The trial court acknowledged the potential harm, but denied appellant's request in favor of giving curative instructions to the jury. As it turned out one of the members of that panel did serve on appellant's jury.
The propriety of the prosecutor's comment with reference to a possible appeal is indeed questionable. However, under the totality of the circumstances presented herein, there was no harm to the appellant. A.R.A.P. 45. See, Pilley v. State, 247 Ala. 523, 25 So.2d 57 (1946); Brothers v. State, 236 Ala. 448, 183 So. 433 (1938); Rutledge v. State, 482 So.2d 1250 (Ala.Cr.App.1983).
At the beginning of the sentencing phase hearing before the jury, the trial court carefully instructed the jury, as to its duty in fixing punishment, as follows:
"It now becomes your duty to determine within the limits prescribed by law which of these two punishments should be imposed on this Defendant. The law of this State provides that when a person is found guilty of a capital case in which the State is demanding the death penalty, a sentencing hearing is to be held before a Jury so that the Jury can determine whether the punishment in the case should be death or life imprisonment without parole. The law also provides that the Jury's determination as to the proper punishment in the case should be based upon a consideration of certain statutory, aggravating circumstances and certain statutory mitigating circumstances provided by law, as well as any other mitigating circumstances relevant to this case.
"The central issue of the sentence hearing concerns circumstances of aggravation and mitigation that should be considered and weighed against each other by the Jury for the purpose of determining the proper punishment in the case.
"At the sentence hearing, the evidence of aggravating and mitigating circumstances may be presented by the State and the Defendant. Each side may also rely in whole or in part on the evidence presented at the first stage of the trial, that being the guilty stage, and being the stage of the trial which this Jury has participated in up to this point.
"In other words, you can consider the evidence presented in that trial, insofar *1079 as the evidence relating to the aggravating and mitigating circumstances. We are now at the sentence hearing in the case. This sentence hearing will proceed as follows: First the District Attorney makes an opening statement outlining the evidence, if any, the State expects to introduce at this hearing with respect to the punishment to be imposed. The District Attorney may also outline what evidence, if any, from the guilt stage of this trial the State intends to rely on with respect to the issue of punishment. Then the Defendant's attorney may make an opening statement outlining what evidence, if any, the Defendant expects to introduce at this hearing with respect to the punishment that you impose. The Defendant's attorney may also outline what evidence, if any, from the guilt stage of the trial the Defendant intends to rely on with respect to the issue of punishment.
"Evidence will then be introduced, which with any evidence that you have already heard that is relevant to the punishment that can be considered by you insofar as it bears upon the punishment to be fixed by the Jury.
"Next, the attorneys will make their argument to you regarding the punishment to be imposed, after which the Court will read you further instructions concerning the law applicable to this sentence hearing, then you will go to the jury room to deliberate and arrive at your verdict, fixing the punishment to be imposed in this case as either life imprisonment without parole or death."
The jury's duty to fix punishment was further outlined by both parties in opening statements during the sentencing-phase hearing. In closing argument at the end of the sentencing-phase hearing appellant's attorney refocused the jury's attention on its solemn duty to determine appellant's punishment. The trial court, likewise, reviewed for the jurors all the decisions which rested on their shoulders. The trial court explained that they were to determine which aggravating and mitigating circumstances existed and to weigh these factors in fixing punishment either at death or life imprisonment without parole. The trial court cautioned the jury to base its punishment verdict upon the evidence and the law as instructed by the trial court and to not be influenced by "passion, prejudice, or other arbitrary factors."
But for appellant's speculations, there is nothing before us to indicate that the jury improperly exercised its duty to fix punishment. We will, therefore, not hold the trial court in error for failing to dismiss those prospective jurors who were inadvertently exposed to the idea that their punishment verdict might be reviewed.
The appellant further contends that the trial court erred by not dismissing "for cause" those prospective jurors who had previously heard about his conviction or sentence resulting from his first trial for this offense. Although we agree that such prior knowledge might have been prejudicial, we do not agree that all jurors with such knowledge should have been automatically excluded from the venire.
The trial court permitted, and participated in, a thorough and sifting, individual, voir dire examination of each prospective juror. The trial court carefully reviewed all challenges of these prospective jurors and excluded those who were, arguably, incapable of giving the appellant a fair and impartial trial. We have carefully reviewed the voir dire testimony and have determined that there was nothing improper in the trial court's refusal to strike prospective jurors solely because they had heard of appellant's prior conviction or sentence. See, Whisenhant v. State, 482 So.2d 1225 (Ala.Cr.App.1982), affirmed in part, remanded with directions on other grounds, 482 So.2d 1241 (Ala.1983). After the trial court had dismissed "for cause" a number of prospective jurors properly challenged by either the state or the appellant, it concluded that the remaining members of the venire could give the appellant a fair and impartial trial, that they could lay aside opinions and impressions based on prior knowledge and render a verdict based on the evidence presented in court. Under the circumstances the trial court's conclusion *1080 was appropriate, and in compliance with standards outlined in Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975)[3] and followed in Whisenhant v. State, supra.
Two members of the venire with prior knowledge of appellant's first conviction for this offense did serve on the jury. However, the voir dire testimony of these two jurors demonstrated that both had only a vague recollection of the prior conviction, that neither knew of the prior sentence, that neither was prejudiced against the appellant, that such prior knowledge would not affect their judgments in the instant trial, and that they could give the appellant a fair and impartial trial. There is no evidence of the existence of any actual jury prejudice against the appellant.
The appellant further challenges certain guilt-phase instructions given by the trial court in its oral charge to the jury. He claims that a general "presumption of malice" instruction and a general "conspiracy" instruction collectively deprived him of due process by removing the state's burden of proving "malice" and a particularized "intent to kill." These claims are without merit. They are not supported by the record.
The trial court's oral charge, when read as a whole, properly informed the jury as to the state's burden of proof for the capital murder charge, and for the lesser included offenses of first-degree and second-degree murder. Any ambiguity in the general, isolated statements challenged by the appellant was harmless in light of the entire oral charge. See, Van Antwerp v. State, 358 So.2d 782 (Ala.Cr.App.), cert. denied, 358 So.2d 791 (Ala.1978). Contrary to appellant's assertions, the jury was properly instructed on the applicable elements of capital murder, including "malice" and "intent to kill."
Furthermore, appellant's own attorney in his opening statement to the jury conceded "that he [the appellant] is at the very least guilty of murder." Moreover, the state's evidence overwhelmingly proved that the appellant acted with "malice" and with a specific "intent to kill" when he actively participated in the double murder of Willene and Carl Nelson. The evidence that he "unloaded" two pistols at or into the bodies of his two victims and that he participated in the stabbing of the victims was sufficient proof of "malice" and "intent to kill." In light of this evidence against him, the appellant presented no evidence in his behalf, no evidence that he acted either without malice or without the intent to kill.
For the reasons outlined above, appellant's capital murder conviction must be affirmed.
However, as will be explained below, we cannot yet pass judgment as to the propriety of appellant's death sentence.
During the sentencing-phase hearing, the following occurred:
"THE COURT: All right. That's exactly what I was going to reinstruct you about. I gave you an instruction in this case that if your verdict is not unanimousWell, if you are not able to reach a verdict in the case, I'll say it that way, then the Defendant would be sentenced to life imprisonment without parole. To sentence the Defendant to death, then it must be a unanimous verdict of all twelve of this Jury.
"All right. You may retire. Do you want to consider this case tonight?
(Jury responded yes.)
"THE COURT: All right. Then you may retire to the jury room to consider the case. You will have out with you the evidence which was introduced by the parties and the forms. We have prepared the forms of verdict here. You will have out the forms of verdict and the evidence presented to you in this case, and when you have reached a verdict, you signify that fact and we will be at the pleasure of the Jury. If you want to work tonight or want to come back tomorrow, all you have to do is let us know.
(Jury out at 6:50 P.M.) *1081 (Jury back at 9:10 P.M.)
"THE COURT: Ladies and gentlemen of the jury, at this point have you been able to reach a verdict in this case?
"THE FOREMAN: Your Honor, we are hopelessly deadlocked. And we were awaiting instructions from you on just what to do.
"THE COURT: All right. Ladies and gentlemen, we have been here since Tuesday morning in this case, which is now at least four-and-a-half days. You have been deliberating this question for a little better than two hours. I do not feel that two hours with the length of time that it took to try it would be adequate time. I know that all of you are tired as well as the Court and everybody else that's here. I think that the Clerk has rooms reserved for you, already had them reserved.
"I think that what we will do, and maybe we will get a fresh start in the morning, is recess you until 9:00 in the morning.
"Now, ladies and gentlemen of the Jury, it is imperative that under the instructions that I have previously given that you do not discuss this case with anyone whatsoever. I'm going to recess you under the same instructions that you have been under at all times.
"So, ladies and gentlemen, I'm going to recess you now until 9:00 in the morning."
Appellant's attorney objected to the trial court's actions and moved that the jury be discharged and a sentencing verdict of "life imprisonment without parole" be entered. The trial court denied appellant's motion and permitted the jury to conduct further deliberations the following morning. After another one and one-half hours of deliberations the jury returned a unanimous verdict fixing appellant's punishment at death. The jury was polled and all twelve jurors confirmed the verdict.
The appellant argues, as he did at trial, that the jury should have been dismissed and a verdict entered when the jury first returned from deliberations and announced that they were "hopelessly deadlocked." We disagree.
In spite of the jury's assessment of its status after over two hours of deliberations, we are not convinced that it was "hopelessly deadlocked." We are more impressed with the trial court's assessment of the situation. The trial was, indeed, into its fifth day and it was after 9:00 p.m. when the jury returned from deliberations. Even before the jurors had retired, at 6:50 p.m., the trial court had invited them to wait and consider their verdict the following morning. The trial court's last statement before they retired was "If you want to work tonight or want to come back tomorrow, all you have to do is let us know." When they returned over two hours later without a unanimous verdict, the trial court concluded that they were tired and would be able to reach a unanimous verdict the next morning after a good night's sleep. The trial court's assessment and conclusions were confirmed when the jury returned a unanimous verdict the next morning after only one and one-half hours of further deliberations.
Under the circumstances, the trial court's actions were not improper. We are not persuaded by appellant's argument that the jury's statement that it was "hopelessly deadlocked" was an attempt to return a "life imprisonment without parole" verdict or that the trial court, in requiring further deliberations, subtly coerced the jury to return a "death" verdict.
In Beck v. State, 396 So.2d 645 (Ala.1980), the Alabama Supreme Court outlined the sentencing-phase procedures which apply in the instant case. See, Coulter v. State, 438 So.2d 336 (Ala.Cr.App. 1982), affirmed, 438 So.2d 352 (Ala.1983). The court stated in Beck that "[if] the jury cannot agree on a sentence of death, the defendant shall be sentenced to life imprisonment without parole." As was stated in Coulter v. State, supra, "[t]his mandate, however, is an instruction for the trial court, not the jury." In other words, the trial court must determine, within its sound discretion, when "the jury cannot agree on a sentence of death." See, Thomas v. State, 460 So.2d 207 (Ala.Cr.App.1983).
*1082 The jury was not even entitled to the instruction it was given in the instant case as to the effect of a failure to reach a unanimous verdict. See, Coulter v. State, supra, and cases cited therein. The jury's duty during the sentencing-phase deliberations, for trials governed by Beck, is to attempt to reach a unanimous verdict for either "death" or "life imprisonment without parole." If the jury fails to reach a unanimous verdict, the defendant "shall be sentenced [by the trial court] to life imprisonment without parole." Beck v. State, supra, (emphasis supplied).
A trial court is fully authorized to "urge a jury to resume deliberations ... as long as the court does not suggest which way the verdict should be returned and no duress or coercion is used." Thomas v. State, supra, [citing, Showers v. State, 407 So.2d 169, 171 (Ala.1981) ]. In the instant case, as in Thomas, there was no evidence of intimidation or coercion, and, consequently, no abuse of discretion by the trial court.
Unlike Thomas, however, wherein the jury did not assess its ability to reach a verdict, the jury in the instant case announced that it was "hopelessly deadlocked." The jury's assessment is certainly a factor for the trial court to consider, but it need not be the controlling factor. We do not find it controlling in this instance. Compare, Jones v. State, 381 So.2d 983 (Miss.), cert. denied, 449 U.S. 1003, 101 S.Ct. 543, 66 L.Ed.2d 300 (1980).
Finally, the appellant contends that a new sentencing-phase hearing is mandated because the trial court's findings with reference to mitigating circumstances do not address all of the mitigating circumstances evidenced during the hearing. The state concedes on appeal that the trial court's order is incomplete and that this cause must be remanded so that the trial court can revise its sentencing order, but insists that a new sentencing-phase hearing before a jury is unnecessary. We agree.
The appellant presented an abundance of "mitigating circumstance" evidence during the sentencing-phase hearing before the jury, including evidence of the influence of drugs and alcohol, appellant's cooperation with the police, appellant's age, appellant's poor family history, and the absence of significant prior criminal activity. The trial court properly instructed the jury that it could consider all of the above circumstances as mitigating circumstances for the appellant. After the jury had returned a verdict fixing appellant's punishment at death, the trial court held its sentencing-phase hearing. The trial court was presented a pre-sentence investigation report in addition to the evidence already presented at the guilt-phase and sentencing phase hearings before the jury. In its oral findings the trial court outlined the aggravating circumstances and found, as mitigating circumstances, that the appellant had no significant history of prior criminal activity and that he was only 19 years old when the offense was committed. In its written order, however, the trial court found, as a mitigating circumstance, only that the appellant was 19 years old when the crime was committed.
The state suggests that the obvious discrepency between the trial court's oral findings and its written order was due to an oversight in its written order. Regardless of the reasons for the discrepancy, it must be "cleared-up" before we can properly review the propriety of appellant's death sentence.
Therefore, this cause is remanded to the trial court for a more complete sentencing order. For purposes of review, the trial court should enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13-11-6, Code of Alabama 1975, each mitigating circumstance enumerated in § 13-11-7, Code of Alabama 1975, and any additional mitigating circumstance supported by the evidence. See, Clisby v. State, 456 So.2d 99 (Ala.Cr.App.1983), opinion after remandment to the circuit court pursuant to Clisby v. State, 456 So.2d 98 (Ala.Cr.App.1983). The revised written findings should also reflect the trial court's conclusions in weighing the appropriate *1083 mitigating and aggravating circumstances, and the sentence imposed.
REMANDED WITH DIRECTIONS.
All the Judges concur.

ON RETURN TO REMAND
HARRIS, Judge.
This cause was remanded to the trial court for a more complete and detailed sentencing order. Specifically, the trial court was directed to prepare written findings as to the existence or nonexistence of the aggravating and mitigating circumstances relied upon by the trial judge in the pronouncement of the death sentence in this case. The trial judge was also ordered to present written findings reflecting the conclusions he reached when he weighed the aggravating and mitigating circumstances in determining the proper sentence.
The trial court's proper compliance with our directions mandates that the conviction and the sentence of death imposed be affirmed.
We must now consider the propriety of the death penalty imposed in this case in accordance with § 13A-5-53(a), Code of Alabama, 1975.
As detailed in the aforementioned code section, the review of the penalty must include a determination of whether any errors adversely affecting the rights of the appellant were committed in the sentencing phase of the proceeding, whether the trial court's findings in relation to aggravating and mitigating circumstances are supported by the evidence, and whether the sentence of death was proper in this case.
After having reviewed the sentencing procedure utilized by the trial judge, we find no errors that adversely affected the rights of the appellant. Furthermore, a review of the trial court's initial and remanded written findings regarding the aggravating and mitigating circumstances of the case reveals that the findings of the trial court are supported by the evidence.[4]
The proper questions that should be considered in determining whether the death sentence was proper in this case are as follows:
(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;
(2) Whether an independent weighing of the aggravating circumstances at the appellate level indicates that death was the proper sentence; and
(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
§ 13A-5-53(b), Code of Alabama, 1975. See Beck v. State, 396 So.2d 645 (Ala.1981).
Nothing in the record before us reflects that the death penalty was imposed under the influence of passion, prejudice or any other arbitrary factor.
We have also independently weighed the aggravating and mitigating circumstances in this case and we are convinced that the death penalty was a proper sentence. The facts of the capital offense are especially heinous, atrocious and cruel. Appellant shot the victims several times and then, with the assistance of his partner, proceeded to ferociously stab the victims numerous times. It is clear that any statutory mitigating circumstances as set out in § 13A-5-51 Code of Alabama, 1975, or any non-statutory mitigating circumstances do not outweigh the aggravating circumstances involved in the present case.
We also find that the death penalty imposed is not excessive or disproportionate to the penalty imposed in similar cases. See e.g. Hill v. State, 455 So.2d 930 (Ala. Crim.App.1984), affirmed 455 So.2d 938 (Ala.1984); Tomlin v. State, 443 So.2d 47 (Ala.Cr.App.1979); affirmed, Ex parte Tomlin, 443 So.2d 59 (Ala.1983); Berard v. State, 402 So.2d 1044 (Ala.Crim.App.1980); Crawford v. State, 377 So.2d 145 (Ala. Crim.App.), affirmed, Ex parte Crawford, 377 So.2d 159 (Ala.1979), vacated on other *1084 grounds, 448 U.S. 904, 100 S.Ct. 3044, 65 L.Ed.2d 1134 (1980).
Therefore, in accordance with Rule 45 A, A.R.A.P., the entire record has been searched for any errors adversely affecting Giles' rights and none found. We conclude that the appellant received a fair trial and sentencing hearing. The findings of the trial judge as to the aggravating and mitigating circumstances are supported by the evidence. The sentence of death is appropriate in this case.
The judgment of the trial court is hereby affirmed.
AFFIRMED, ORIGINAL OPINION EXTENDED.
All the Judges concur.

APPENDIX A

IN THE CIRCUIT COURT OF BLOUNT COUNTY, ALABAMA

STATE OF ALABAMA, Plaintiff,

vs.

ARTHUR LEE GILES, Defendant.

CASE NO. CC 79-090

RETURN TO REMAND

ORDER
The above styled cause was tried in the Circuit Court of Blount County, Alabama in December, 1982. The trial resulted in a conviction of the defendant for capital murder. Thereafter, sentence hearing was held before the jury and later before this Court. Sentence was imposed against the defendant of death by electrocution.
Upon appeal, the Court of Appeals affirmed the defendant's capital murder conviction but remanded said cause for a more complete sentencing order.
Since remand of said cause, this Court has reviewed the testimony offered by the State and the defendant at sentence hearing. This Court does hereby adopt the sentence order heretofore entered by this Court on December 28, 1982. After further considering the testimony presented to this Court on December 28, 1982 and further considering the aggravating and mitigating circumstances as set out in Title 13A-5-49 and 13A-5-51 of the 1975 Code of Alabama, this Court does hereby make further findings in said cause.
In considerating the aggravating circumstances, this Court finds that there was no evidence presented that would justify a finding of an aggravating circumstance that the offense was committed by a person under sentence of imprisonment.
There was no evidence to justify a finding that the defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to the person.
This Court has previously found from the evidence that the defendant knowingly created a great risk of death to many persons, and in the order entered on December 28, 1982, the Court stated the reasons based on the evidence for such finding. The Court found and now so finds that the nature of the wounds inflicted upon the deceased and the other four persons were such that could have likely caused death to all six people and was inflicted within a very short time; and at said time the wounds were calculated by the defendant and his accomplice to cause death.
The Court has previously found and does now find the capital offense was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, robbery. The basis of this finding has previously been enumerated in the order of this Court entered on 12-28-82.
With regard to the aggravating circumstances in Title 13A-5-49(5), there was no evidence to justify a finding that the capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.
The Court finds that with regard to Subsection (6) of the above Code Section, that there was no evidence for finding that the capital offense was committed for pecuniary gain nor was there any evidence upon which a finding that the capital offense *1085 was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of law.
This Court has previously found and does hereby find as an aggravating circumstance that the capital offense was especially heinous, atrocious or cruel compared to other capital offenses. This Court finds that by a preponderance of the evidence that the defendant on the occasion of the commission of the capital felony for which he was tried, shot five of the six people present in the deceased's home and after the victims were shot, the defendant in concert with his accomplice stabbed and or slashed the victims numerous times and that such slashing of the two deceased victims was repeated until there was little or no question of the death of said two victims. All of the acts being performed in the presence of the other victims with the exception of the victim, Tony; and that this Court finds that the acts perpetrated on the two deceased victims under the circumstances was especially heinous, atrocious or cruel.
With regard to the mitigating circumstances set out in Title 13A-5-51, 1975 Code of Alabama, this Court did in its oral findings find that the defendant had no significant history of prior criminal activity. However, this Court neglected to make such a finding in its formal sentencing order.
According to the probation report filed with this Court, there was contained in said report a statement concerning the fact that the defendant committed a homicide in 1973. The defendant was a juvenile at that time. There was no evidence offered to this Court legally substantiating such an event; so this Court therefore finds that the defendant has no significant history of prior criminal activity.
At the sentence phase hearing, the defendant offered evidence indicating that the defendant had been brought up in a poor environment and without the proper guidance of a father and there was also evidence concerning the defendant's homelife, schooling and commencing work at an early age. No testimony was offered that would justify a finding that at the time of the commission of the capital felony, that the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance.
The Court finds that the victim or victims was not a participant in the defendant's conduct or consented to the act.
With regard to Title 13A-5-51(4), this Court does find that the acts for which the defendant was convicted was perpetrated by the defendant and an accomplice, Aaron Jones. From the defendant's own statement and the testimony of the surviving victims, this Court does not find that the defendant's participation was relatively minor. To the contrary, this Court finds from a preponderance of the evidence that the defendant's participation in the events that occurred on the commission of the capital felony the defendant was an active perpetrator in the commission of the capital felony.
This Court finds that the defendant did not act under any extreme duress or under the substantial domination of another person. The evidence that was presented at the guilt stage was contrary thereto. Evidence was offered by the defendant by one witness indicating that some time around 6 o'clock or prior thereto and prior to the commission of the offense in the early morning hours of the next morning that the defendant had been drinking Scotch whiskey and had also been smoking marijuana. However, the defendant's own mother testified she last saw the defendant around 9 o'clock p.m. on the night before the commission of the capital felony and at that time the defendant appeared to be perfectly sober and according to her statement, perfectly normal. She later saw the defendant around daylight the next morning, that being a time after the commission of the capital felony and the defendant appeared to be sober at that time. The defendant's own statement recalled the events that occurred on the night of the commission of the capital felony. The statement made by the defendant was not inconsistent with the testimony of the surviving victims at the scene. The defendant's *1086 own statement would tend to lend creditability to the statement made by his mother concerning the fact that the defendant was not suffering under any mental impairment at the time of the commission of the capital felony.
This Court therefore finds the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired.
The Court has previously found that the age of the defendant at the time of the crime did constitute a mitigating circumstance and this Court does now so find that the age of the defendant at the time of the crime was a mitigating circumstance.
This Court having considered all of the statutory mitigating circumstances and any additional mitigating evidence offered by the defendant and further after consideration of all of the matters that was presented to the Court during any of the hearings both in mitigation and by aggravation and taking into consideration all the other matters that were properly before the Court as hereinabove stated, this Court now does find and is convinced beyond a reasonable doubt and to a moral certainty that the aggravating circumstances as shown above and brought before this Court outweigh any mitigating circumstances as shown above and that the aggravating circumstances are sufficient to uphold the jury's finding of punishment at death.
It is therefore the judgment of this Court that the sentence of death as previously imposed on the defendant on the 28th day of December, 1982, should be carried out by the State of Alabama.
Dated this the 4th day of April, 1984.
 /s/ H.E. Holladay
 Presiding Circuit Judge
12-14-82 The probation officer shall prepare a pre-sentence report and prior to hearing, serve a copy upon defendant.
 /s/ H.E. Holladay, Judge
12-21-82 On motion of attorney for defendant, sentence hearing continued to December 28th, 1982 at 11:00 a.m.
 /s/ H.E. Holladay, Judge
12-28-82 This being the date heretofore set for hearing concerning the sentence of the defendant and for consideration of any aggravating or mitigating circumstances relevant to the sentence of the defendant. The State of Alabama was represented in open Court by the Hon. Fitzhugh Burttram, District Attorney, and the defendant was represented in open court by the Hon. John Carroll. The Court did open court and called upon the District Attorney for presentation of any evidence concerning any aggravating circumstances upon which the State of Alabama was relying and which are set out in Title 13-11-6, 1975 Code of Alabama.
The District Attorney did advise the Court that the State of Alabama was relying upon the following aggravating circumstances:
(1) The defendant knowingly created a great risk of death of many persons;
(2) The capital felony was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, rape, robbery, burglary or kidnapping for ransom;
(3) The capital felony was especially heinous, atrocious or cruel and submitted said aggravating circumstances to the Court on the evidence heretofore presented to the Court and jury in the guilt stage of the hearing before the jury, and the evidence presented at the sentencing phase of the hearing.
The Court thereafter called upon the attorney for the defendant for the presentation of any mitigating circumstances relied upon by the defendant and as set out in Title 13-11-7, 1975 Code of Alabama. The attorney for the defendant submitted to the Court for consideration the evidence concerning mitigating circumstances heretofore presented to the court and jury in the sentence phase of the hearing.
Thereafter, the Court opened the hearing for arguments by counsel for the State of Alabama and counsel for the defendant. After arguments, this Court took the matter *1087 under consideration as to what sentence would be imposed upon the defendant.
The Court, thereafter, called the defendant before the Court and advised the defendant that the jury had heretofore found the defendant guilty of capital murder and had sentenced him to death.
This Court has heretofore and now finds the defendant guilty of capital murder as set out in the indictment; and thereupon asked the defendant if he had anything to state to the Court before imposition of sentence. The defendant stated that he had nothing to say.
This Court finds from the testimony and evidence in this case that the defendant and an accomplice, Aaron Jones, went to the home of Carl and Willene Nelson in the early morning hours of November 10th, 1978. From the defendant's confession which was entered into evidence, the defendant made the statement that it was without question that their intention on going to said home was for the purpose of robbery.
From the evidence, it is without question in this Court's mind that there was a robbery committed on said occasion, or else an attempt to rob. This is based on the condition in which the defendant left the home; the statement made by the defendant on that occasion; and the further fact that the defendant, without question, forceably took one of the deceased's pistols and used same to shoot some of the victims and left with same in his possession.
The evidence further shows that, on the occasion, the defendant shot at least five people and, in concert with the accomplice, inflicted numerous stab wounds on the two deceased victims and stabbed at least one additional person; that two of the victims were killed from the pistol wounds and the stabbings; and that the pistol shots and stab wounds inflicted on the other victims were such that they could easily have caused death.
Therefore this Court, in considering the aggravating circumstances as set out in Title 13-11-6, 1975 Code of Alabama, finds: (1) That the defendant knowingly created a great risk of death to many persons. This Court is of the opinion that the Legislature intended this aggravating circumstance primarily to apply to those instances involving bombs or terrorist activities such as shooting into a crowd and the risk of death to may persons occasioned by a single act. However, the events that occurred in this case all occurred at the same time and same place by a series of continuous acts in a very short period of time, and the nature of the wounds inflicted on the various victims could have easily caused death not to two but to at least six persons on said occasion. (2) That the capital felony was committed while the defendant was engaged in or was an accomplice in the commission of, or an attempt to commit, robbery. (3) That the capital felony was especially heinous, atrocious or cruel.
The Court now considers mitigating circumstances as set out in Title 13-11-7 of the 1975 Code of Alabama: (1) The defendant, at the time of the commission of the offense, was nineteen years of age. Therefore, this Court finds as a mitigating circumstance the age of the defendant at the time of the crime.
After having considered the aggravating circumstances and the mitigating circumstance as set out above, this Court finds that the mitigating circumstance is insufficient to outweigh the aggravating circumstances.
The defendant was thereupon called to the Bench and sentence was imposed on him as follows: The Court having found the defendant guilty of capital murder as charged in the indictment, it is hereby ORDERED that the defendant be and is hereby sentenced by this court to death. It is hereby ORDERED that Arthur Lee Giles shall be executed on the 28th day of March, 1983, at some time prior to seven o'clock in the morning with the walls of the William C. Holman Prison at Atmore Alabama, in the manner and method as provided by Title 15-18-82 of the 1975 Code of Alabama, or at such other place as may be provided by law. Your death shall be caused by a current of electricity passing through your body of sufficient intensity to cause death and the application and continuance *1088 of such current through your body until death shall occur therefrom.
ORDERED this the 28th day of December, 1982.
 /s/ H.E. Holladay, Judge
12-28-82 The Defendant was thereafter called back before this Court and advised that there was an automatic appeal from the verdict and judgment of this Court. The Court having heretofore found the defendant to be indigent, did ORDER that the Hon. John Carroll and the Hon. Dennis Balske be and are hereby appointed as counsel to represent the defendant on appeal.
 /s/ H.E. Holladay, Judge

ON APPLICATIONS FOR REHEARING
McMILLAN, Judge.
On return to remand, this court, on January 22, 1985, extended the original opinion issued in this case and affirmed the appellant's conviction and sentence of death. Both the State and the appellant have filed applications for rehearing. The opinion on return to remand is hereby extended in order to clarify certain statements made in the previous opinion.
The capital offense in the instant case was committed on November 10, 1978. The trial court noted in its order on remand that it had considered certain "aggravating circumstances," as set out in § 13A-5-49, Code of Alabama (1975). Because the capital offense in the instant case was committed prior to the enactment of the 1981 capital punishment statute, the trial court's reference to the "aggravating circumstances" definition of § 13A-5-49 was technically improper.
The trial court should have referred to those aggravating circumstances as set out in § 13-11-6, Code of Alabama (1975) (now repealed). The language of § 13-11-6(3) which established "a great risk of death to many persons," the aggravating circumstance referred to in the trial court's order, as an "aggravating circumstance" in capital cases was identical to the language in § 13A-5-49(3), Code of Alabama (1975). The order on remand also made reference to the aggravating circumstances set out in § 13-11-6(4), Code of Alabama (1975), which is virtually identical to the present § 13A-5-49(4), Code of Alabama (1975);[5] See Lynn v. State, 477 So.2d 1365, 1380 (Ala.Cr.App.1984), rev'd on other grounds, 477 So.2d 1385 (Ala. 1985). These "technical errors" were errors without any injury to the appellant.
The final aggravating circumstance considered by the trial court was the fact that the capital offense was "especially heinous, atrocious or cruel compared to other capital offenses." Section 13A-5-49(8), Code of Alabama (1975). (Emphasis added.) Under § 13-11-6(8), the trial court was only required to consider whether the capital felony was "especially heinous, atrocious or cruel." Because the trial court, in the present case, additionally compared the atrocious nature of the offense to "other capital offenses," the error benefited the appellant and he cannot complain. Ex parte Bush, 431 So.2d 563, 564 (Ala.), cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983).
The revised sentencing order submitted on return to remand requires additional consideration. In considering the "especially heinous, atrocious or cruel" aggravating circumstance of the instant capital offense, the trial court stated as follows:
"This court has previously found and does hereby find as an aggravating circumstance that the capital offense was especially heinous, atrocious or cruel compared to other capital offenses. This court finds that by a preponderance of the evidence that the defendant on the occasion of the commission of the capital felony for which he was tried, shot five of the six people present in the deceased's home and after the victims were shot, the defendant in concert with his *1089 accomplice stabbed and or slashed the victims numerous times and that such slashing of the two deceased victims was repeated until there was little or no question of the death of said two victims. All of the acts being performed in the presence of the other victims with the exception of the victim, Tony; and that this court finds that the acts perpetrated on the two deceased victims under the circumstances was especially heinous, atrocious or cruel."
The trial court erred by failing to apply the "beyond a reasonable doubt standard" to prove the factual existence of any aggravating circumstances. The State, in brief, acknowledges the trial court's error in applying the "preponderance of the evidence" burden of proof to the underlying facts regarding aggravating circumstances.
Although the trial court may have applied the wrong standard of proof, this court has independently applied the proper standard of proof. This court concludes that the capital offense committed in the instant case was, beyond a reasonable doubt, especially heinous, atrocious, and cruel. Our finding is based, in part, upon the fact that the victims were repeatedly stabbed and slashed, even after their death. The homicides in this case were particularly "conscienceless" and "pitiless" and were "unnecessarily torturous to the victims." Ex parte Kyzer, 399 So.2d 330, 334 (Ala. 1981). See also Hubbard v. State, 500 So.2d 1204 (Ala.Cr.App.1986) (wherein the murder was especially heinous, atrocious, and cruel in that the victim was alive after she was shot in her mouth and left, bleeding profusely, before being shot directly in the front of her skull); Ex parte Julius, 455 So.2d 984 (Ala.1984), cert. denied, 469 U.S. 1132, 105 S.Ct. 817, 83 L.Ed.2d 809 (1985) (wherein the victim's death was found extremely torturous and, thus, especially heinous, atrocious and cruel); Dunkins v. State, 437 So.2d 1349 (Ala.Cr.App.), aff'd, 437 So.2d 1356 (Ala.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984) (wherein the murder was especially heinous, atrocious, and cruel in that the victim was stabbed sixty-six times). The murders involved extended torture, as opposed to instantaneous killings. Cf. Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). Thus, the acts were especially heinous, atrocious, or cruel.
We have concluded that, in all respects, the sentence of death was appropriate in this case. The judgment of the trial court is hereby affirmed.
OPINION EXTENDED; APPLICATIONS FOR REHEARING OVERRULED.
All the Judges concur.
NOTES
[1] Appellant's version of the stabbing was in sharp conflict with Jones's confession, in which Jones stated that appellant had the knife and had already stabbed some of the victims before Jones stabbed anyone. See, Jones v. State, supra.
[2] Appellant's trial, his second trial for the instant offense, occurred more than four years after the crime and almost three and one-half years after his first trial.
[3] Appellant's reliance on United States v. Williams, 568 F.2d 464 (5th Cir.1978), for resolution of this issue is misplaced for those reasons outlined in Whisenhant v. State, supra.
[4] The trial court's original order and judgment at the sentencing hearing is hereto attached as Appendix A, along with the corrected order and judgment received on remandment.
[5] The only difference between the two sections is that in § 13-11-6(4), there is reference to "kidnapping for ransom," while the corresponding reference in § 13A-5-49(4) is to mere "kidnapping."